ANDREW SEYFERTH

*v.*

THE GROVES AND SAND RIDGE RAILROAD COMPANY.

*Opinion filed October 24, 1905.*

1. CONTRACT—*option on land is binding on vendor for the time
therein stated.* A written agreement to convey land, at the option
of the proposed vendee, within a given time and at a certain price is
binding upon the proposed vendor during the time extended there-
by, if made upon sufficient consideration and with knowledge on
the part of the proposed vendor that he is bound although the other
party is not.

2. SAME—*when failure to pay consideration will not avoid con-
tract.* A proposed vendor who refuses tender of the nominal con-
sideration named in a contract giving an option on land, stating
that if he wants anything he will "take it all at once," cannot come
into a court of equity and seek to have the contract avoided because
the nominal consideration was not paid.    ＼

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Jackson county; the Hon. W. W. DUNCAN, Judge, presiding.

HERBERT & LEVY, for appellant.

W. W. BARR, and R. J. STEPHENS, (J. M. DICKINSON, of counsel,) for appellee.

Mr. JUSTICE RICKS delivered the opinion of the court:

The only question presented upon the record in this case is one of law, and is whether or not the written option set out in the opinion was binding upon appellant to the end of the time stated therein.

The Appellate Court, in stating and disposing of the case, made the following remarks, in which we concur and adopt the same as our views:

"Andrew Seyferth, the appellant, filed a bill in the circuit court of Jackson county to enjoin the Groves and Sand Ridge Railroad Company, appellee, 'from going upon or doing any act preparatory to or in construction of its railroad' upon the land of complainant described in the bill. The defendant answered the bill, to which complainant filed replication. Upon hearing had before the court the finding was for the defendant, and a decree was entered dismissing the bill for want of equity and for costs, from which appellant appeals.

"On the 20th day of October, 1902, appellant, in consideration of one dollar, executed and delivered to the agent of appellee a written contract, under which, among other things, he granted unto the Groves and Sand Ridge Railroad Company the option to purchase the following described lands belonging to the undersigned, (describing the land in controversy, being a strip for right of way,) upon condition expressed 'that if said railroad company shall, within four

months from the date hereof, pay or tender to the under-signed * * * the further sum of $45 per acre, then the undersigned * * * agrees that he will make, execute and deliver to the said railroad company a good and sufficient deed, with general warranty, conveying to the said railroad company a fee simple title. * * * The undersigned here-by grant to the said railroad company, its contractors, sub-contractors, and its and their agents, servants and assigns, the right, upon the execution of this present instrument, to take immediate possession of the said strip of land and to construct a railroad upon the same, and for that purpose to enter in and upon said strip of land with all necessary men, horses, carts and implements, laborers and material required for the construction of said railroad, hereby releasing to the said railway company * * * all damages on account thereof; and said railroad company shall have the right * * * to remove the railroad track and superstructure therefrom in case the option herein provided for shall not be exercised: *Provided, however,* that if the railroad company shall not so pay or tender the said further sum within the period aforesaid, all rights under this instrument shall cease and determine from and after the expiration of the period aforesaid.'

"This instrument was signed by appellant and his wife, Emma Seyferth, and both acknowledged the same November 5, 1902, before a notary public, whose certificate is attached. The consideration, one dollar, recited in the contract was not in fact paid, and for this reason appellant contends that the contract or option agreement is void and without effect. Nothing was said about the one dollar consideration by either the appellant or the agent of appellee at the time the writing was drawn up and signed, but on the fifth day of November, when the agent returned with the notary public to appellant's house to take the acknowledgment of appellant and his wife, appellant called attention to the fact that he had not received the one dollar consideration, and thereupon

the agent took from his pocket one dollar and tendered it to the appellant. He did not take it, saying, 'If I want anything I will take it all at once.' On February 7, 1903, appellant served notice on appellee that he withdrew the option and revoked the contract. The next day appellee, by its agent, tendered appellant the sum required by the contract and demanded a deed, which was refused. On the 12th day of May, 1903, according to the bill, which was filed on the 18th day of the same month, appellee went upon the strip of land in controversy and took possession preparatory to the construction of its railroad thereon.

"As we view the record, the foregoing is a full and fair statement of all the facts in evidence that have any bearing upon the questions presented. We are of the opinion that the conclusion reached by the chancellor who heard the case was justified and that the decree was right. No question is made of the validity of this contract in all of its essential features, unless it may be held void for want of a consideration. This is a proceeding in a court of equity, and under the circumstances shown the complainant in the bill is not in a position to avoid an obligation for want of payment of a purely nominal consideration, which was tendered and declined for the stated and only reason that if he wanted anything, (meaning the one dollar nominal consideration,) 'I will take it all at once,'—that is, when the defendant shall have exercised his option and paid for the land. It was equivalent to saying to appellee that he waived the payment, or that he preferred postponement of the payment, or that, as between the parties, it should be considered as paid though the money was not to be received until a later adjustment. From the evidence it clearly appears that when the contract was acknowledged, and thereafter until the notice of his withdrawal, his understanding, no less than that of appellee, was that the contract was valid and binding. At any rate, from aught he said or did no other conclusion can be drawn. He may not be heard to say that his undisclosed reason for

refusing the tendered consideration was other than stated or reasonably to be inferred from what he did and said. That would be contrary to equity and conscience, and may not prevail in a proceeding of this kind. In this case the tender of the payment of the consideration at the time the contract was completed by the signature of the wife, formally acknowledged and delivered to the appellee's agent, must be held as effective as though the money had been received. If appellant refused to receive the money when tendered, in order to secure the advantage now claimed, and concealed his purpose, as he did, then he was acting in bad faith, and therefore is not entitled to a hearing in the court of equity."

We might further add that it is now universally held that a written agreement to convey land, at the option of the proposed vendee, within a given time and at a certain price, if made upon a sufficient consideration, with full knowledge on the part of the person extending the option that he is bound and the other is not, is such a contract, though lacking mutuality, as will be enforced in equity, where the party holding the option signifies his acceptance within the time limited upon the terms as stated; and as is said in *Guyer* v. *Warren,* 175 Ill. 328, "where the one holding a buyer's option makes his election to purchase, and tenders the amount agreed to according to the terms of the contract, it is the duty of the seller to accept the price and execute a deed to the purchaser for the property. * * * Such contracts are perfectly valid, and it is now well settled that a court of equity may decree a specific performance of them,"—citing *Watts* v. *Keller,* 56 Fed. Rep. 1.

We are of the opinion that the judgment of the Appellate Court affirming the decree of the circuit court is right, and it is accordingly affirmed.          *Judgment affirmed.*