THOMAS B. CORRIGAN, Appellant, *vs.* PATRICK RALPH.—
(MARY RALPH *et al.* Appellees.)

*Opinion filed December 16, 1914.*

1. SPECIFIC PERFORMANCE—*discretion of court in the matter of specific performance is not arbitrary.* While in some measure the enforcement of a contract to convey land rests in the sound discretion of the court, yet such discretion is not arbitrary, and where a valid contract is understandingly entered into between the parties which appears to be fair and contains no objectionable or inequitable features, its performance will be enforced.

2. SAME—*fact that the promisor's wife is not obligated to sign deed does not defeat specific performance.* The fact that a contract for the sale of a farm does not obligate the promisor's wife to join in the conveyance, and that she refuses to join therein, does not defeat the right of the promisee to specific performance as against the promisor.

APPEAL from the Circuit Court of Livingston county; the Hon. G. W. PATTON, Judge, presiding.

E. A. SIMMONS, for appellant.

HENRY M. KELLY, and STEVENS R. BAKER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This is an appeal from a decree dismissing a bill filed by appellant, Thomas B. Corrigan, against Patrick Ralph, for the specific performance of a contract to convey eighty acres of land.

The bill alleges Patrick Ralph was the owner of the land on September 9, 1909, and on that day entered into a written agreement with appellant to sell and convey to him said land. The contract, the performance of which is sought to be enforced, was dated September 9, 1909, in and by which Patrick Ralph agreed to convey to appellant, in fee simple, clear of all encumbrances, by good and sufficient warranty deed, eighty acres of land described, for

$13,600. The contract acknowledged the receipt of $1600 in cash, and it was agreed the balance ($12,000) "is to be paid in the form of a mortgage or trust deed secured by the above described property, running for a period of five years from March 1, 1910, with interest at five per cent per annum, payable annually, with interest at the rate of six per cent per annum, payable after maturity, annually, on the whole sum remaining from time to time unpaid, and to pay all taxes, assessments or impositions that may be legally levied or imposed upon said land subsequent to the year 1910." The contract provided for the forfeiture of the cash payment if appellant failed to comply with his part of the agreement. The contract further provided that Ralph was to furnish an abstract before November 1, 1909, and appellant agreed to furnish, in writing, his objections to it, if any, within thirty days after its receipt. The contract was subject to a lease on the premises running from March 1, 1910, to March 1, 1911. The bill avers that appellant was ready and willing to comply with his part of the agreement, and that on March 1, 1910, he tendered Ralph a note for $12,000, dated on that day, payable to the order of Ralph five years after date, with interest at five per cent per annum, payable annually, until maturity and with six per cent interest per annum after maturity, and also a mortgage on the premises in the usual and customary form to secure the note; that he also on said March 1, 1910, executed another note for $12,000 in accordance with the terms of the contract and executed a trust deed upon the premises to secure the same, which note and trust deed he tendered to Ralph in lieu of the mortgage, if he preferred it, but that Ralph refused to comply with his contract and make the conveyance. The bill alleged that by mutual mistake the parties, in drawing the contract, omitted the number of the section, but that the land was in section 14, which was well known to both parties and was intended to be so described in said written contract.

There is a prayer in the bill that the contract be reformed in this respect so as to express the intention of the parties.

Patrick Ralph answered the bill denying he made the agreement to convey the land, and averred that at all times when appellant was endeavoring to buy the land he told appellant and his father that his (Ralph's) wife was not willing to sell and would not join him in the deed; that on September 9, 1909, he (Ralph) was not in a condition to fully know and understand what he was doing about selling the property; that he had been drinking, which fact was known to appellant and his father, but that appellant urged him to agree to the sale, and that appellant and his father urged respondent to force his wife to agree to the sale. The answer furthers avers that respondent went with appellant and his father to the city of Dwight for the purpose of further discussing the sale of the land; that respondent told appellant he was willing to sell at the price agreed upon if his wife was willing, but if she was not he would make no deal; that the parties went together to the place where the agreement was prepared; that the same was prepared without his advice or suggestion; that he is unable to read or write; that the agreement was not read to him, and that without knowing or being advised of its contents he signed the same by his mark. The answer denies respondent received the cash payment of $1600, and avers the agreement was made subject to the approval of respondent's wife; that she had at all times refused to agree to the sale of the land, which was well known to appellant, and that the contract was procured by fraud, deceit and misrepresentation of appellant and his father; that it is inequitable and unjust, the consideration inadequate, and that its performance would work an injustice and hardship upon respondent.

After replication filed the cause was referred to the master in chancery to take the proof and report his conclusions of law and fact. The master reported in June,

1910, finding that the contract was valid and binding upon the parties; that by a mistake of the scrivener who reduced the contract to writing the number of the section was omitted, and that by another mistake of the scrivener the contract provided for the payment by appellant of the taxes levied upon said land subsequent to the year 1910, whereas it was intended to provide for the payment by appellant of the taxes levied subsequent to the year 1909. The master recommended that the contract be reformed in these respects to comply with the intention of the parties and that a decree for specific performance be granted as prayed. Objections to the master's report by Ralph were overruled by the master and were renewed as exceptions before the chancellor. After the cause was heard, and before any decree was rendered, Ralph died, and his heirs were made parties by a supplemental bill, brought into court, and at the May term, 1914, the chancellor sustained exceptions to the master's report and entered a decree dismissing the bill for want of equity. Complainant below has prosecuted this appeal to this court.

The decree finds that prior to the execution of the written contract Ralph agreed to sell the land to Thomas J. Corrigan, who is appellant's father, for $13,600, on condition that Ralph's wife would consent to the sale; that his wife refused to consent to the sale, of which fact Thomas J. Corrigan had knowledge, but afterwards, on the afternoon of September 9, 1909, Thomas J. Corrigan, appellant (his son) and Ralph went to the bank in Dwight, where Charles D. McWilliams was secured by Thomas J. Corrigan to prepare the contract; that Ralph, although not in an advanced state of intoxication, had been drinking, by by reason of which and his illiteracy and the apparent haste of the draftsman of the agreement he did not comprehend its contents, but, so far as he understood, thought it was in accordance with the terms upon which he had agreed to sell the land, among which was that the deferred pay-

ment was to bear six per cent interest and that he was dealing with Thomas J. Corrigan and not his son, Thomas B. Corrigan; that Ralph signed the agreement with the understanding that it would be of no force or effect unless his wife joined him in the execution of the deed. The decree finds the contract did not correctly state the terms of the verbal agreement between the parties, that Ralph took no part in dictating or stating the terms and conditions when it was prepared, and that it would be inequitable and unjust to enforce the specific performance of said agreement.

Patrick Ralph had formerly lived on the eighty acres of land in controversy, but for a few years prior to September 9, 1909, he and his wife had resided in the city of Dwight. He was seventy-three years old and could neither read nor write. Thomas J. Corrigan, father of appellant, owned and lived on a farm about four miles from Ralph's farm. Thomas B. Corrigan, appellant, lived on a farm belonging to his father and joining Ralph's farm. The parties were acquainted with each other and there had been some little talk between them about the sale of the land prior to September 9, 1909. On that day appellant and his father went to the Ralph farm, where Ralph was at work. They there (or at least Thomas J. Corrigan and Ralph) talked about the sale, the price and the terms. Ralph got in the buggy with the Corrigans and went to the home of Thomas J. Corrigan and had dinner. After dinner he and Thomas J. Corrigan went together to Dwight, where they met appellant. At the suggestion of Ralph the three went to the bank of which Charles McWilliams was cashier, to have the contract for the sale of the land reduced to writing. McWilliams was not at the bank but was called in, and in the presence of the Corrigans and Ralph dictated to a stenographer the agreement. After it was completed it was signed by Ralph by his mark, which was witnessed by two employees of the bank, and was also signed by appellant. The Corrigans did not have the $1600 but bor-

rowed $1000 from McWilliams' bank, which, together with checks cashed, made $1600. A certificate of deposit was issued for that amount to Ralph by the bank and he left the money in the bank. A day or two after the contract was signed Ralph requested McWilliams to send the abstract to some one to have it brought down to date, and on September 11, 1909, McWilliams sent it to an abstracter at Pontiac for that purpose. Thomas J. Corrigan procured the abstract at the abstracter's office after it was finished and took it to E. A. Simmons, solicitor for appellant in this case, for examination. Simmons prepared a written opinion pointing out a number of objections, none of which were of serious character. Afterwards Ralph called on McWilliams again and asked what he should do about the abstract. McWilliams suggested the names of certain lawyers in Pontiac for him to advise with, but finally advised him that Simmons would probably see to the correction of the objections with as little expense as anyone, and that would be likely to better satisfy Corrigan. Ralph took the abstract to the office of Simmons and inquired the cost of removing the objections to the title. Simmons told him it would not be over $20 and probably considerably less. Shortly afterwards Ralph again went to Simmons' office and demanded his abstract, which was given to him. On November 15, 1909, Ralph caused a letter to be written to Thomas Corrigan, which was received by appellant. The letter stated it was written to notify the person to whom it was addressed that Mrs. Ralph refused to consent to the sale of the farm, refused to sign any papers connected with the sale, and that it would be impossible for Ralph to sell the land. The letter also stated the $1600 paid down was at the Bank of Dwight and was to be returned to the person to whom the letter was addressed, and the addressee was requested to call at once and release all papers which had been made out so far, so the money paid could be promptly returned.

We think the weight of the proof abundantly shows that Ralph understood and comprehended the agreement when it was made; that he was not in an advanced stage of intoxication; that if he was intoxicated at all, it was in so slight a degree that none of the parties present when the agreement was executed could detect it. The testimony of McWilliams and both the Corrigans that the agreement was read over to Ralph before it was signed is disputed only by Ralph himself. The agreement was executed in duplicate, and the next morning after it was executed Ralph called at the bank for a copy of it, which was delivered to him by McWilliams. This he admitted, and also admitted he took it to John W. Grady, telegraph operator for a railroad in Dwight, who read it over to him. Grady testified he read it over slowly to enable Ralph to understand it. His recollection was Ralph said it was all right. He said nothing about his wife not wanting to sign the deed. Ralph testified he met Corrigan (meaning, as we understand it, Thomas J. Corrigan,) about four days after Grady read the contract to him and told him his wife would not sign a deed and that he did not want Corrigan's money. Corrigan testified that this conversation was at a much later date, but however that may be, the only excuse Ralph gave for refusing to perform the agreement was that his wife would not sign the deed. He did not claim that he did not make the agreement or that his condition was such when it was made that he did not understand it. The weight of the proof is decidedly to the effect that he did understand it, and his own conduct with reference to having the abstract extended, his interviews with McWilliams and Simmons about correcting the defects in it, and his conversation with Grady, tend strongly to show that he understood the contract. In his letter of November 15 he did not claim that he did not understand the contract or that it was not in accordance with the agreement between the parties. He admitted having the $1600 cash payment

265 — 37

in the bank, but refused to carry out the agreement because he said his wife would not sign the deed. The contract did not obligate the wife to join in the conveyance, but this would not defeat the enforcement of the contract made by Ralph to convey the land. *Litsey* v. *Whittemore,* 111 Ill. 267; *Hall* v. *Hall,* 125 id. 95; *Watson* v. *Doyle,* 130 id. 415.

While in some measure the enforcement of a contract to convey land rests in the sound discretion of the court, such discretion is not arbitrary, and where a valid contract is entered into between the parties which appears to be fair and contains no objectionable or inequitable features, its performance will be enforced. (*Cumberledge* v. *Brooks,* 235 Ill. 249; *Zempel* v. *Hughes,* id. 424; *Anderson* v. *Anderson,* 251 id. 415; *Heller* v. *McGuin,* 261 id. 588.) There is no proof that the consideration agreed to be paid for the land was not a fair and adequate price, and we find nothing in the testimony to indicate that the performance of the contract would be inequitable or unjust.

It is insisted by appellees that the contract was uncertain and did not express the intention of the parties. The claim that Ralph understood he was selling the land to Thomas J. Corrigan and that the note for the deferred payment was to bear six per cent interest from date is not supported by the evidence. Appellant admits it was intended by the contract that he should pay all taxes levied subsequent to the year 1909, whereas the agreement states he is to pay the taxes levied subsequent to the year 1910. It is evident, as the master reported, that this was a mistake, and no doubt resulted from the mention of the year in which the taxes were payable instead of the year in which they were levied. Taxes levied in 1909 were payable in 1910, and it was the evident intention of the parties that Ralph should pay the taxes levied in 1909, payable in 1910, and that appellant should pay all subsequent taxes.

The evidence in this record satisfies us that there is no escape from liability to perform this contract, and that the decree is clearly contrary to the weight of the testimony. The decree is reversed and the cause remanded.

*Reversed and remanded.*