## CARTER OIL CO. v. OWEN et al.
### No. 20—D.

District Court, E. D. Illinois.
April 10, 1939.

Walter Davison, of Mattoon, Ill., and Harold F. Lindley and W. M. Acton, both of Danville, Ill., for plaintiff.

Bryan, Williams, Cave & McPheeters, of St. Louis, Mo., Baker, Lesemann, Kagy & Wagner, of E. St. Louis, Ill., J. G. Burnside, of Vandalia, Ill., and J. Ivan Cole, of St. Elmo, Ill., for defendants.

LINDLEY, District Judge.

By their motion to dismiss, certain defendants question the sufficiency of the complaint as a statement of a cause of action in equity. Plaintiff avers that it is assignee of an oil lease entered into the 28th day of May, A. D. 1936, whereby Owens, being the owner of certain lands in Fayette County, leased the same to plaintiff's assignor for the production of oil and gas. This lease, executed under seal, duly acknowledged before a notary public and waiving right of homestead, in consideration of $1 in hand paid and "of the covenants and agreements * * * on the part of the lessee to be kept and performed," leased the land described "for the purpose of mining and operating for oil and gas." It contained agreements to the effect that it should remain in force for a term of ten years and as long thereafter as oil and gas should be produced; that one-eighth the oil produced would be delivered to the credit of lessor, free of cost, into tank, reservoir or pipe line, and "to pay lessor one-eighth of the gross proceeds each year, for the gas from each well." The lease provided that if no well should be commenced on or before the first of June, 1936, it would terminate, unless the lessee should on or before that date pay or tender to the lessor the sum of ten cents an acre which would operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from the date of payment; that in like manner and upon like payments or tenders, the commencement of a well might be further deferred for like periods successively; that should the first well be a dry hole, then, if a second well should not be commenced on the land within twelve months from the expiration of the last preceding rental period, the lease would terminate as to both parties unless the lessee, on or before the expiration of said twelve months, should resume the payment of rentals; that upon the resumption of payment, the lease would continue in full force as though there had been no interruption.

Plaintiff further avers that the date, June 1, 1936, should have been June 1, 1937; that the lease should be reformed in accord with that fact; that plaintiff on May 10, 1937, paid the rental due June 1, 1937, and, on May 2, 1938, that due June 1, 1938; that the lessor has accepted such rent and that the lease remains in full force.

It is further averred that after the execution, delivery and recording of the lease, two other leases purporting to be executed by the lessor, for separate portions of the premises, to one J. B. Apperson, and subsequent assignments of said leases to various defendants, some twenty-five in number, were executed and recorded and constitute clouds upon the title of plaintiff; that the subsequent leases and all assignments thereof are inferior and subordinate to the title of plaintiff; that defendant Seaton claims some interest in the premises, the nature of which is unknown; that he has contracted with defendants Barnes and Menhall to drill oil wells upon said premises and that the contract thus made is a cloud upon the title of plaintiff; that other defendants claim some interests in the premises; that such interests, if any actually exist, are invalid as against plaintiff and constitute clouds upon its title; that producing oil wells have been constructed upon certain portions of the land; that certain defendants are removing oil and delivering it to the Allied Refining Company and Allied Pipe Line Corporation; that an accounting is necessary to determine the amount of oil thus far removed; that seven-eighths of such oil belong to plaintiff; that defendants have wrongfully entered upon the premises and continue to trespass thereon and have threatened to continue to remove oil therefrom unless restrained; that each of defendants are without right, title or authority in and to the premises; that their actions are such as will irreparably damage plaintiff.

Plaintiff prays that the court may appoint a receiver to take possession of the premises, to operate all oil wells thereon and to market the product; that the right and title of plaintiff be declared superior to the rights of all defendants in the premises and that the subsequent leases and assignments be cancelled and decreed null and void as against plaintiff; that an accounting be had; that defendants be permanently enjoined from continuing to trespass and to operate under said subsequent leases and assignments and from interfering with plaintiff in operating under its lease and from asserting any right to the oil and gas under said land or the right to mine and remove the same, and that

plaintiff have such other relief as the court may deem proper.

■ Under the decisions of Illinois, the right to occupy the premises for the production of oil confers upon the lessee a free-hold estate. Bruner v. Hicks, 230 Ill. 536, 82 N.E. 888, 120 Am.St.Rep. 332, was the first Illinois case so holding. As late as 1921 the Supreme Court of Illinois adhered to this doctrine. Transcontinental Oil Co. v. Emmerson, 298 Ill. 394, at page 403, 131 N.E. 645, 16 A.L.R. 507. To the same effect are: People v. Bell, 237 Ill. 332, 86 N.E. 593, 19 L.R.A.,N.S., 746, 15 Ann.Cas. 511; Ohio Oil Co. v. Daughetee, 240 Ill. 361, 88 N.E. 818, 36 L.R.A.,N.S., 1108; Daughetee v. Ohio Oil Co., 263 Ill. 518, 105 N.E. 308.

This case is not unlike that of Gillespie v. Fulton Oil & Gas Company, 236 Ill. 188, 86 N.E. 219, 221. There the lease involved recited the payment of $1 as consideration and contained the covenant that the lessee "shall, within twelve months from the date hereof, drill a test well." It further provided that in case no well be completed within twelve months "the [lessee] shall pay the party of the first part a rental of twenty-five cents per acre per year, to be paid annually, counting from the expiration of said twelve months," and that in case no well be completed within five years, the lease should be null and void.

The lessee brought suit in equity praying for an injunction, accounting, appointment of receiver and cancellation of a subsequent lease to other parties. The trial court found the issues for defendant and dismissed the bill for want of equity. The appellate court affirmed the decree; the Supreme Court reversed.

The lessee averred that it had kept and performed the covenants of the lease and was willing to carry on in good faith with its performance; that in violation of its rights, the lessor subsequently pretended to lease the premises to one Rogers who took with notice and knowledge of the prior lease; that the assignee of the second lease had entered upon the land and was producing oil; that irreparable damage was accruing to plaintiff; and sought to remove the second lease as a cloud upon its title. The court granted the equitable remedy holding that plaintiff had set forth and proved a valid cause of action in equity and saying: "The contention that appellant has a complete remedy at law is untenable. Ejectment will not lie. Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53 [122 Am.St.Rep. 144]. Equity has jurisdiction to prevent waste and irreparable injury at the suit of an assignee of an oil and gas lease against an adverse lessee. Indianapolis Natural Gas Co. v. Kibbey, 135 Ind. 357, 35 N.E. 392; Allegheny Oil Co. v. Snyder [6 Cir.] 106 F. 764, 45 C.C.A. 604; Logan Natural Gas & Fuel Co. v. Great Southern Gas & Oil Co. [6 Cir.] 126 F. 623, 61 C.C.A. 359; Allegany Oil Co. v. Bradford Oil Co., 21 Hun [N.Y., 26] 32."

■ Thus, under the law of Illinois, it is established that the title under such an oil lease is a freehold; that to protect the same, equity has jurisdiction to remove clouds and to prevent waste and irreparable injury, there being no complete remedy at law. These legal truths are decisive of the issue unless the oil lease before us is so different in legal effect from that before the court in Gillespie v. Fulton Oil & Gas Co., supra, as to exclude it from the established rule.

It is first contended by defendants that the lease cannot be enforced in equity because of the announcement by the courts of Illinois in cases passing upon the validity of similar leases, and they refer to various cases. In Cortelyou v. T. N. Barnsdall & Red Tank Oil Company, 140 Ill.App. 163, affirmed 236 Ill. 138, 86 N.E. 200, the court found, however, that there was no consideration for the lease. Gillespie v. Fulton Oil & Gas Co., 140 Ill. App. 147, was reversed by the Supreme Court in 236 Ill. 188, 86 N.E. 219. In Clark v. Potts, 255 Ill. 183, 99 N.E. 364, the court again held that there was no consideration. There was a mere option agreement to sell land without consideration; consequently the offer could be withdrawn at any time before its acceptance. The same is true of Miller v. Moffat, 153 Ill.App. 1, 4. In Illinois Kaolin Company v. Goodman, 252 Ill. 99, 96 N.E. 867, Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46, Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53, 122 Am.St.Rep. 144, Ulrey v. Keith, 237 Ill. 284, 86 N.E. 696, each of the leases involved contained a surrender clause which gave to the lessee the right to surrender the lease, at any time it should choose to do so, upon payment of $1. There was no like privilege extended to the lessor. The Supreme Court held such a clause fatal to relief in equity. It said

that the leases were valid but that the lessees could not invoke a remedy in equity in the nature of compulsion of specific performance because of lack of mutuality. These decisions have been frequently criticized (see Rich v. Doneghey, 71 Okl. 204, 177 P. 86, 3 A.L.R. 352 and editorial note following; 18 R.C.L. 1214; 3 Ill.Law Rev. 608 & p. 43), and the Supreme Court of Illinois has not in recent years had occasion to reconsider the doctrine; the decisions stand unmodified. The court in Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53, 54, 122 Am.St.Rep. 144, distinguished leases containing a surrender clause from the ordinary option agreement, saying: "Cases of this character are distinguishable from a line of cases in this and other states which hold that an option contract for the sale of real estate is valid, and may be specifically enforced after the party holding such option has, within the time specified, elected to purchase and pays or tenders the purchase price. Such payment or tender supplies the element of mutuality, and neither party can thereafter recede from the contract. Such contracts have frequently been upheld and enforced in this state. Estes v. Furlong, 59 Ill. 298; Perkins v. Hadsell, 50 Ill. 216; Hayes v. O'-Brien, 149 Ill. 403, 37 N.E. 73, 23 L.R.A. 555; Guyer v. Warren, 175 Ill. 328, 51 N. E. 580. While the power of revocation reserved in this lease has the effect of depriving appellant of equitable remedies in the nature of a specific performance, still the contract is not void for want of mutuality. The reservation of the right to cancel is not an infirmity which renders the contract void ab initio, but it deprives the party for whose benefit it is made of relief in equity in the nature of a specific performance."

In Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46, 49, the court said: "The surrender clause in this lease gave to the lessee an option to surrender it before the expiration of the term, but it did not give to the lessors any option to compel a surrender. Such options and contracts are not invalid in the law (Thayer v. Allison, 109 Ill. 180), and they do not create a tenancy at will (Brown v. Fowler, 65 Ohio St. 507, 63 N. E. 76; New American Oil & Mining Co. v. Troyer, 166 Ind. 402, 76 N.E. 253, 77 N. E. 739). As the payment of the consideration cannot be disputed for the purpose of invalidating the lease, it must be held that the lessees paid one dollar for the right to explore for oil and gas, and also agreed to do certain things, and was to have the right, upon a further payment of one dollar, to surrender the lease. The circuit court could not rightfully cancel the lease because of that agreement. If the court could do that in any case, it could only be where nothing had been done under the lease, and that was not the case here."

The appellants insisted that there was an implied agreement that the lessee would drill wells to develop the farm reasonably, but the court said that if such were implied, its breach would furnish no ground for cancellation of the lease but merely an action for damages. In doing so, the court distinguished the case of Coffinberry v. Sun Oil Co., 68 Ohio St. 488, 67 N.E. 1069. The lease was held valid and the decree cancelling it was reversed.

In Guffey v. Smith, 237 U.S. 101, 35 S. Ct. 526, 529, 59 L.Ed. 856, the Supreme Court of the United States said: "The supreme court of Illinois, while fully sustaining the right to maintain such a suit in the courts of the state when the lease contains no clause giving the lessee an option to surrender it (Gillespie v. Fulton Oil & Gas Co. [236 Ill. 188, 86 N.E. 219]), holds that the presence of such a clause in the lease operates to prevent the lessee from directly or indirectly enforcing it in equity (Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 13, 14, 122 Am.St.Rep. 144, 84 N.E. 53, and Ulrey v. Keith, 237 Ill. 284, 298, 86 N.E. 696), the ground of distinction being that the surrender clause, although lawful in itself, and not affecting the validity of the lease, renders it so lacking in mutuality that equity will remit the lessee to his remedy at law."

However, that court disagreed with the Illinois holding and allowed a decree such as is sought in the present case even though the lease contained a surrender clause.

The decisions of Illinois as to the effect of a surrender clause are of no value in the solution of the question here presented, for the reason that this lease is devoid of any such clause.

Defendants insist, however, that for the lease at bar, there was no valuable consideration; that it is a mere option and that inasmuch as it is without consideration, no force or validity may be attributed to it, as plaintiff is bound to do nothing.

The consideration essential to, the limitations of and the force and effect to be

given, a valid option agreement have been frequently defined in Illinois. In Adams v. Peabody Coal Co., 230 Ill. 469, 473, 82 N. E. 645, 646, the coal company sued for specific performance of a written contract given in consideration of $1 granting to the coal company an option to receive and pay for a warranty deed to coal lands at a certain price per acre within a certain time. The court said:

"The writing in this case was more than an offer, and the consideration was sufficient to support it as a valid and binding contract. It is important to distinguish clearly between an offer to sell something, which offer may or may not become a completed contract by acceptance in the future, and a contract to leave that offer open for a time, which, if accepted, becomes at once an executed contract. Only the last is an option. An option is a continuing offer, which the offerer may not withdraw until the expiration of the time limited. 21 Am. & Eng. Ency. of Law, (2d. Ed.) pp. 925, 926. The parties agreeing 'to sell an option to buy for the sum of $1, there is no reason why such an express consideration is not an adequate one.' Guyer v. Warren, 175 Ill. 328, 51 N.E. 580. Where the contract is under seal, consideration is imported. Hayes v. O'Brien, 149 Ill. 403, 37 N.E. 73, 23 L.R.A. 555; Forthman v. Deters, 206 Ill. 159, 69 N.E. 97, 99 Am.St.Rep. 145. Inadequacy of consideration is, of itself, no ground for impeaching a contract in a court of equity. * *

"While it was formerly held, with some degree of strictness, that the want of mutuality would render a contract for the sale of land incapable of specific enforcement, the doctrine of the earlier cases upon this subject has been considerably modified. 'Where the party holding an option signifies his acceptance within the time limited and upon the terms stated, the obligation of the contract becomes mutual and capable of enforcement at the instance of either party.' Guyer v. Warren, supra. See, also, Seyferth v. Groves & Sand Ridge Railroad Co., 217 Ill. 483, 75 N.E. 522; Carter v. Love, 206 Ill. 310, 69 N.E. 85; Estes v. Furlong, 59 Ill. 298."

In Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46, 49, the oil lease recited the payment of $1 consideration, the court said: "It is true that for the purpose of applying equitable principles and granting equitable remedies a court of equity will inquire into the real consideration of a contract, although it is under seal, and recites a consideration, if the effect is not to impair the instrument as a conveyance. That is done in cases where specific performance of a contract is asked for (Crandall v. Willig, 166 Ill. 233, 46 N.E. 755), and other cases resting on like principles. But while the recital of the payment of the consideration in an instrument may be contradicted for such purposes, an acknowledgment of such payment cannot be contradicted by parol for the purpose of invalidating the instrument or impairing its legal effect as a conveyance. Stannard v. Aurora, Elgin & Chicago Railway Co., 220 Ill. 469, 77 N.E. 254. The interest of the appellee Ulrey under the lease had been assigned to the appellee the Illinois Oil & Gas Company, with the exception of one-sixteenth, and the purpose of the allegation in the bill and evidence that the dollar was not, in fact, paid, was to invalidate the lease, which could not be done."

This is in accord with the generally recognized rules. "Under the general principles of contract the consideration for an option may consist of some benefit to the promisor; * * * of some money or other thing of value given, exchanged or paid; or of some promise or undertaking of the promisee to pay, give or exchange such thing of value, or to incur some trouble or expense, or to do or not to do some lawful act * * * in consideration of which acts and promises on the part of the promisee the proposer promises that his offer shall be left open for a specified time. This has been held true as regards the expenditure of time and moneys in the exploration of the land for oil or minerals." 27 R.C.L. 339 et sequi.

"According to the better view, in the absence of a statute destroying the effect of a seal as importing a consideration, if the option is under seal this conclusively imports that it was based on a good and sufficient consideration and prevents the vendor from withdrawing it." 27 R.C.L. 339.

"According to the better view, the inadequacy of the consideration, if there is in fact a valuable consideration, does not affect the binding effect of the option either at law or in equity. This is the rule generally applied in case of options given in consideration of one dollar." 27 R.C.L. 340.

■ If an offer is made, and the offeror promises not to withdraw it for a specified time, and such promise not to withdraw such offer for the time specified is upon valuable consideration, the offeror has not the right to withdraw such offer during the time specified. Page on Contracts, page 182.

■ If the option is accepted before it is revoked, a contract binding on both parties is created thereby, as it is in the nature of a continuing offer. If an option for value is accepted before it is revoked, the adequacy of the consideration for the option is immaterial. Page on Contracts, page 969.

In Carter v. Love, 206 Ill. 310, 69 N.E. 85, 87, Carter, in consideration of $1, granted to Love the option to purchase a certain farm at a certain price within a certain time. Carter attempted to rescind the option before the time for performance expired and upon his refusal to perform, Love began suit. The court said: "The next proposition of counsel is that a contract, to be specifically enforced in equity, must be supported by a good and· valuable consideration, and must be reasonably fair and just, and that the contract of Carter was unilateral and without consideration. If the contract was of that character, it would become mutual and capable of enforcement at the instance of either party, upon acceptance of its terms by Love within the time limited, and before the option was withdrawn. Crandall v. Willig, 166 Ill. 233, 46 N.E. 755; Guyer v. Warren, 175 Ill. 328, 51 N.E. 580. There was such an acceptance by Love at least on February 4th, when he wrote the letter to Carter sending him the draft for $1000. * * * It is also urged that Carter had a right to rescind the contract before acceptance, that the filing of the bill was a rescission, and that Love could not thereafter legally perform the contract on his part. As we have already said, there was an acceptance on the part of Love before the bill was filed; and, the contract having become legally binding upon the parties, Love had until the 1st day of March to tender performance. Appellant could not prevent such tender of performance by filing the bill and attempting to rescind the contract."

In Guyer v. Warren, 175 Ill. 328, 335, 51 N.E. 580, 582, the court said: "We are of the opinion that the case at bar does not come within the class of cases where lack of mutuality will present the enforcement of the contract. The rule requiring mutuality has no application to an option contract like the one here under consideration. There is here an optional sale upon a fair consideration. The consideration named in the written agreement is one dollar. As the parties agree to sell an option to buy for the sum of one dollar, there is no reason why such an express consideration is not an adequate one."

The court also held that an optional contract becomes mutual when the proposed vendee signifies his acceptance; that an optional contract to convey land becomes mutual, and capable of enforcement at the instance of either party, when the proposed vendee signifies his acceptance within the time limited and upon the terms stated in the contract. See also Consol. Coal Co. v. Schmisseur, 135 Ill. 371, 25 N. E. 795; American Sand & Gravel Co. v. Chicago Gravel Co., 184 Ill.App. 509; Match Corp. of America v. Acme Match Corp., 285 Ill.App. 197, 1 N.E.2d 867; Seglin v. Lemein, 334 Ill. 566, 166 N.E. 56; Miedema v. Wormhoudt, 288 Ill. 537, 123 N.E. 596; Greengard v. Bernstein, 343 Ill. 416, 175 N.E. 424; Allen v. Hayes, 309 Ill. 374, 141 N.E. 188; Corrigan v. Ralph, 265 Ill. 571, 107 N.E. 155.

In Seyferth v. Groves & S. R. R. Co., 217 Ill. 483, 75 N.E. 522, 523, Seyferth, in consideration of $1, granted to the Railroad Company an option to buy a certain right-of-way within a certain time. The $1 was not paid but when the contract was acknowledged before a notary, Seyferth said that he had not received the dollar and the agent of the company then took from his pocket $1 and tendered.it to Seyferth, who did not accept it, saying, "if I want anything I will take it all at once." Thereafter, Seyferth served notice on the vendee that he withdrew the option. The Railroad Company then filed suit for specific performance. The Supreme Court adopted the opinion of the Appellate Court in which it was said:

"No question is made of the validity of this contract in all of its essential features, unless it may be held void for want of a consideration. This is a proceeding in a court of equity, and under the circumstances shown the complainant in the bill is not in a position to avoid an obligation for want of payment of a purely nominal consideration, which was tendered and declined for the stated and only reason that, if he wanted anything (meaning the $1.00

nominal consideration), 'I will take it all at once'; that is, when the defendant shall have exercised his option and paid for the land. It was equivalent to saying to appellee that he waived the payment, or that he preferred postponement of the payment, or that, as between the parties, it should be considered as paid, though the money was not to be received until a later adjustment. From the evidence it clearly appears that, when the contract was acknowledged, and thereafter until the notice of his withdrawal, his understanding, no less than that of appellee, was that the contract was valid and binding. * * *

"In this case the tender of the payment of the consideration at the time the contract was completed by the signature of the wife, formally acknowledged and delivered to the appellee's agent, must be held as effective as though the money had been received. * * *

"We might further add that it is now universally held that a written agreement to convey land, at the option of the proposed vendee, within a given time and at a certain price, if made upon a sufficient consideration, with full knowledge on the part of the person extending the option that he is bound and the other is not, is such a contract, though lacking mutuality, as will be enforced in equity, where the party holding the option signifies his acceptance within the time limited upon the terms as stated; and as is said in Guyer v. Warren, 175 Ill. 328, 51 N.E. 580, 'where the one holding a buyer's option makes his election to purchase, and tenders the amount agreed to according to the terms of the contract, it is the duty of the seller to accept the price and execute a deed to the purchaser for the property. * * * Such contracts are perfectly valid, and it is now well settled that a court of equity may decree a specific performance of them,'— citing Watts v. Kellar [8 Cir.], 56 F. 1."

It is certain, therefore, that any valuable consideration, even though nominal, is sufficient in an optional agreement; that such an agreement extends to the offeree a valid binding option which may not be withdrawn during the period in which performance may be tendered and that if within that period the offeree does that which he is compelled to do in order to protect his right, the performance upon his part makes the option mutually binding. Obviously, even if there were no consideration for the original agreement, if it were a mere offer, acceptance of the offer or acts of performance amounting to acceptance before it is withdrawn, would complete the contract. 27 R.C.L. 339. This is elementary, as it is at the basis of every contract, —acceptance of an offer before it is withdrawn.

So, if, upon reading of the instrument, it be concluded that it contains no obligatory covenants upon the part of the lessee and amounts to a mere option until accepted, it became, in view of the consideration expressed, a binding option agreement and the payment of the rent within the time provided constituted a completed transaction. Even were it admitted that the consideration was insufficient, it would, as suggested above, still be a binding contract by acceptance by the lessee before the offer was withdrawn.

It is averred by defendants that this is a suit for specific performance and that under such a contract, the courts of Illinois will not grant the relief prayed. I consider Gillespie v. Fulton Oil & Gas Co., supra, and Guffey v. Smith, supra, decisive of this question. In the latter case the court said: "The rule intended to be invoked has to do with the specific performance of executory contracts, is restrained by many exceptions, and has been the subject of divergent opinions on the part of jurists and text writers. Without considering it in other aspects, we think it is without present application. Rightly understood, this is not a suit for specific performance. Its purpose is not to enforce an executory contract to give a lease, or even to enforce an executory promise in a lease already given, but to protect a present vested leasehold, amounting to a freehold interest, from continuing an irreparable injury calculated to accomplish its practical destruction. The complaint is not that performance of some promised act is being withheld or refused, but that complainants' vested freehold right is being wrongfully violated and impaired in a way which calls for preventive relief. In this respect the case is not materially different from what it would be if the complainants were claiming under an absolute conveyance rather than a lease. In a practical sense the suit is one to prevent waste, and it comes with ill grace for the defendants to say that they ought not to be restrained because, perchance, the complainants may sometime exercise their option to surrender the lease. We think this option, which has not been exercised and may

never be, is not an obstacle to the relief sought." [1] See also 14 R.C.L., Sec. 88, p. 381; Restatement of the Law of Contracts Vol. 1, Sec. 380, 372, 377B; High on Injunctions, 4th ed. Sec. 431. 1134A, 1150.

▮▮▮▮ This action is not at all in its essence a bill for specific performance. Such a suit seeks a decree commanding a conveyance or some other affirmative act by the real defendant. It usually seeks per-

---

[1] In the Guffey cases, the writer appeared for certain defendants whose interests were found to be unaffected. In the trial court, the cause was referred to the Honorable Walter T. Gunn, now. Justice of the Supreme Court of Illinois, as master. In his report, amongst the findings, he said:

"The Master further finds from the evidence that oil and gas leases containing a surrender clause are in very general, if not universal, use, especially in leasing what is commonly called 'wild cat' territory.

"Oil and gas are found stored and confined in certain kinds of sand at considerable distance beneath the surface of the earth. Their presence, or the presence of oil and gas in paying quantities, can only be ascertained to a certainty, by drilling, and the drilling of such wells is a very expensive method of search, and is by the terms of such leases borne by the operator.

"The usual custom of exploring for oil and gas in 'wild cat,' or unexplored territory, is for the operator, if possible, to obtain a large block of territory to be explored for oil and gas. He begins with a test well, and can then go on drilling wells in different directions as signs of oil and gas improve.

"If he has a small amount of territory, and should discover oil near the edge of his block of leases, other operators can lease the adjacent lands, and obtain the substantial benefit of his operations. In exploring for oil and gas in new territory, it is customary to drill only one well at a time, as the information gained by drilling each new well, is of advantage in locating the next one.

"In many parts of the country it has been found impractical to drill in the winter or spring on account of the impassable condition of country roads for heavy traffic. This, and other conditions, have rendered it customary for oil operators to secure as large a block of land as possible, and to provide in their leases for either the drilling of a well, or the paying of rental, in case of a failure to drill.

"The object of the surrender clause is to allow the operator to cancel his block of leases, or any portion of it, at any time. Land may be tested and found to be unproductive of oil or gas, and the land can then be surrendered to the owner. The rental provided keeps on accru-

ing until the time of the drilling of the well, or of the cancellation of the lease, and in a large block of leases, the expense of paying rental amounts to a great deal. Since the object of the lease is to explore for oil and gas, it does not appear that after the field has been tested and found unproductive, that the presence of such a surrender clause is an inequitable provision."

In discussing an issue similar to the one here presented, he used the following language:

"It is claimed by the defendants that the presence of this clause in the lease of the complainants would prevent a court of equity from granting a decree for specific performance, and hence bar the complainant from relief in this case by injunction, under the ruling in Ulrey v. Keith, 237 Ill. 284, 86 N.E. 696, which holds that a suit to enjoin a breach of contract is governed by the same rules as a bill for specific performance, and remedy by injunction will be denied if the contract is so wanting in mutuality that the defendant being free from personal bar, could not specifically enforce the contract against the complainant.

"Without discussing whether the rule announced in the Illinois cases is the rule in the Federal Courts, it seems doubtful whether it has any application at all to the case at bar. The reason that the courts, as between the parties to an oil and gas lease, will not enforce them specifically, is because of a lack of mutuality. These oil leases, however, have been declared by the Illinois authorities to be a valid, binding contract. (Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N. E. 53, 122 Am.St.Rep. 144; Ulrey v. Keith, 237 Ill. 284, 86 N.E. 696.) But the courts simply decline to interfere when a bill for specific performance or injunction is filed.

"That this rule would be followed between two rival lessees or assignees of such lessees, each claiming under a separate lease containing the same vice or infirmity, to the Master seems exceedingly doubtful. There is no contract relation between the rival lessees. So far as either of them is concerned, the prior lease has the better title. There is no relation between them, whereby the question of specifically performing anything could possibly exist. Between them, it is simply a question of which one, as against the right of the other, is a tres-.

formance of a contract by the opposing party. Here the suit is essentially one to prevent repeated trespasses, to remove the second lease as a cloud upon plaintiff's title and to prevent irreparable damage to and waste of plaintiff's property. Plaintiff seeks no affirmative act from his original opposing contractor; that affirmative act has been performed by the execution of the lease. So far as the lessor is con-

passer. There is no contract relation between them that a court could say is so lacking in mutuality as to bar a bill for specific performance, and unless this element exists, it does not appear on what grounds relief should be denied.

"Both of the Illinois cases, viz.: Watford Oil and Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53, 122 Am.St.Rep. 144, and Ulrey v. Keith, 237 Ill. 284, 86 N.E. 696, that have passed upon this point, have been cases wherein the suit was between the lessor and the lessee, in which case the rule therein declared would doubtless apply.

"In Watford Oil & Gas Co. v. Shipman, 233 Ill. 9, 84 N.E. 53, 54, 122 Am. St.Rep. 144, in passing on this question, the court says:

" 'Under this clause appellant may surrender the lease for cancellation at any time, and thereby relieve itself from all future liability under it. The option of appellant to terminate the lease at any time upon payment of one dollar deprives appellant of the right to specific performance, directly or indirectly, until it has performed the contract, or placed itself in such position that it may be compelled to perform the contract on its part.'

"This language clearly implies, if it does not in so many words state, that it is applicable only between the parties to the lease.

"As between two contending lessees, claiming under two separate leases, neither one would have, as against the other, the right to surrender for cancellation, nor if it did, surrender its own lease for cancellation, would it have any effect upon the rights of the other lessee; and thus they are not within the reason of the rule.

"The later case of Ulrey v. Keith, 237 Ill. 284, 86 N.E. 696, follows the Watford Oil & Gas case, but the opinion cites opinions from other jurisdictions. In the Ulrey case itself, as well as all the cases cited in the opinion, the suits were between the parties to the contract itself, and not between different parties claiming under different contracts. The law of Illinois up to this point may be summarized as follows:—

"An oil or gas lease conveys an interest in real estate (Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46);

"It is a valid, binding contract (Poe v. Ulrey, 233 Ill. 56, 84 N.E. 46); and

"The surrender clause, even between the parties to the lease itself, does not render the contract illegal and void. (Ulrey v. Keith, 237 Ill. 284, 86 N.E. 696).

"If, then, the presence of the surrender clause in the lease is a bar to the complains' suit for injunction, it must be because the owner of the land, the complainants' lessor, is a party to the suit. He is, however, while probably a necessary party, only a nominal one, and the relief required against him is not of such a character that it could be said that he was enjoined from violating his contract with the complainant. The complainants pray that he may be enjoined and restrained from assisting the owners of the subsequent lease from depriving the complainants of the possession of the land.

"It seems to the Master that there is a very essential difference between praying that the owner of the land be restrained from violating his own contract, and that of asking that he be restrained from assisting another person to possess and hold the real estate, as against the rights of the owner of the prior lease.

"If such were the law, no oil or gas company developing lands under a lease containing a surrender clause would be secure for a moment, as another oil company, under a similar lease, could, with the connivance of the owner of the land, dispossess the first operator by force, and the latter would be deprived of any remedy whatever in the courts. Such a state of affairs, instead of producing any relief, would be a source of disorder and contention, and in many instances, doubtless the cause of armed conflict."

Discussing the decisions with regard to right to an injunction as contrasted to a right for specific performance, he said:

"In the case of Singer Sewing Machine Company v. Union Button-Hole Co., Fed. Cas. No. 12904, the court holds that an injunction may be granted to restrain acts in violation of a lawful contract, although the nature of the contract is such that specific performance cannot be enforced. In that case, a corporation was the owner of certain patents, and granted an exclusive license to the complainant to sell certain machines containing the patented invention, at a stipulated price. After furnishing many machines, the corporation, without the fault of the complainant, refused to deliver more, and assigned the patent to another having knowledge of the contract.

cerned, it seeks only to restrain him from aiding and abetting in the commission of trespasses and waste. The lessor is a necessary party only because the cloud upon the title sought to be vacated is one in which apparently the lessor has some interest. But plaintiff relies upon a completed conveyance by virtue of which he has a freehold; that freehold he seeks to protect against trespasses, waste and irreparable damage by

"On a bill in equity by the licensee, a preliminary injunction was granted, restraining all conduct that would put it out of the power of the defendants to fulfill their contract, even though it is urged that it was a contract which could not be specifically enforced. The court says:

" 'It is argued with great ability by the defendants, that the complainant is not entitled to specific performance, and that, therefore, it cannot have an injunction which is merely auxiliary. Granting the premises, I am not prepared to concede the conclusion. If the court cannot order a contract for the making of button-hole machines to be specifically performed by reason of the impossibility of superintending the details of such a business, it does not follow that the bill may not be retained as an injunction bill. It was formerly thought that an injunction would not be granted to restrain the breach of any contract, unless the contract were of such a character that the court could fully enforce * * * it on both sides. Upon this ground there are many decisions refusing to interfere with contracts for personal services, however flagrant might be the breach of them. * * * but all these cases were overruled by one of the ablest chancellors who has adorned the woolsack, in Lumley v. Wagner, 1 De G.M. & G. 616. * * * It is now firmly established that the court will often interfere by injunction when it cannot decree performance."

"And referring to the case of Rutland Marble Company v. Ripley, 10 Wall. 339, 19 L.Ed. 955, the same court says:

" 'I cannot think that the court intended to announce any general proposition that they would never enforce a contract which one party had a right to put an end to in a year. Every thing must depend upon the nature and the circumstances of the business. In many of the cases that I have cited, the plaintiff had it in his power to end the contract.'

"In the case of Joy v. City of St. Louis, 138 U.S. 1, 11 S.Ct. 243, 34 L.Ed. 843, a bill of intervention was filed by the City of St. Louis and the Colorado Railroad Company against the Wabash Railroad Company, and its receivers. The bill was filed in two suits, one of which was for a bill to restrain the Wabash Railroad Company and its receivers, from refusing the plaintiffs the right to use the right of way of the Wabash Railroad Company. The defendant resisted on the ground, among other things, that since the Wabash Railroad Company did not have the right to compel the Colorado Railroad Company to use its right of way, the contract was not mutual, and equity would not interfere, and the injunction in that case was granted, although the case of Rutland Marble Company v. Ripley, supra, was called specifically to the court's attention.

"In the case of Franklin Telegraph Co. v. Harrison, 145 U.S. 459, 12 S.Ct. 900, 36 L.Ed. 776, a bill was filed to restrain the Telegraph Company from terminating the plaintiff's use of a wire on its line. The contract provided that the leased wire should, after ten years, belong to the Telegraph Company, but subject to the use of the plaintiff, by the payment of $600.00 annually.

"After the expiration of the ten years, the plaintiff came to demand so much use of the wire, that the Telegraph Company gave notice that they could not afford to furnish plaintiff indefinitely with the exclusive use of the wire, and would terminate the contract. The contract was of such a nature that the defendant could not compel the plaintiff to go on with it, but nevertheless, the court held that the injunction should be granted. In this case also the case of Rutland Marble Company v. Ripley was cited, but was passed over without any discussion.

"Each of these cases, except for the fact that it is a suit for injunction, instead of specific performance, seems to be in fact similar to the case of Rutland Marble Company v. Ripley, but the holding of the court therein was exactly opposite.

"In the case of General Electric Co. v. Westinghouse Electric Co., C.C., 151 F. 664, 672, where a bill was filed for injunction, restraining the further violation by defendant of a contract for the sale of electric equipment, and for an accounting, the injunction was granted, even though the defendant could not have enforced specifically the plaintiff's agreement, and although there was no mutuality of remedy, the court granted a conditional decree, dissolvable upon plaintiff's failure to perform. The court in that case said:

" 'There is a class of cases where a defendant may be enjoined from violating

an injunction not commanding affirmative action by the lessor but commanding all defendants to desist from waste, trespasses and irreparable damage to the freehold. The real controversy is between the first grantee of the freehold against a subsequent grantee of the same freehold by the same grantor. The lessor, therefore, is only an incidental defendant.

It was for this reason that Justice Gunn when master recommended similar relief which the trial court granted. (See footnote.) The Supreme Court in Guffey v. Smith, supra, affirmed this decree. Its reason for so doing was akin to that urged by plaintiff, for, in the end, the court did what the Supreme Court of Illinois had said was proper in Gillespie v. Fulton Oil & Gas Co., supra, namely, recognized the validity of the lease and the right of plaintiff to protection. Justice Van Devanter found that the Supreme Court of Illinois recognized the propriety of such relief in the Illinois case cited and applied it in the Guffey case, even though there was in that case a surrender clause. There being in this case no

surrender clause, the decision of the Supreme Court of Illinois in the Gillespie case and that of the Supreme Court in the Guffey case are decisive.

I am of the further opinion that the lease implies an obligation upon the part of plaintiff to develop the leased premises for oil with reasonable diligence. So far as I can determine, the Supreme Court of Illinois has not passed upon this question. In Cortelyou v. Barnsdall, 236 Ill. 138, 86 N.E. 200, 202, the court said: "Appellants contend, however, that an implied covenant arises, binding Seybert to drill, develop, and operate the premises demised. Whether such an implied covenant may be gleaned from an instrument in substance, as that now before us is a question upon which the authorities in other jurisdictions are not uniform. We deem a discussion of those cases unnecessary, as the decisions of this court warrant the conclusion that this contract was without mutuality, and that the option could be withdrawn at any time before Seybert had, by some act done after

---

the negative part of an agreement when neither defendant nor the plaintiff can have specific performance of the affirmative side * * * of the same agreement. The answer of equity in such cases to the want of mutuality in remedy is a conditional decree for performance, or enjoining a violation of the covenant—one good so long as plaintiff performs, and self-dissolving upon his failure to perform.'

"In Western Union Telegraph Co. v. Union Pacific Railway Company, C.C., 3 F. 423, 429, the court makes use of the following language:

"'It is insisted by counsel for defendants that the contract set out in the bill * * * is one which requires the performance of continuous duties, involving the exercise of skill, personal labor, and cultivated judgment; and that, therefore, a court of equity will neither decree its specific performance nor enjoin its violation. That the contract is in its nature incapable of being enforced by a decree for specific performance is very clear, (Rutland Marble Co. v. Ripley, 10 Wall. 339 [19 L.Ed. 955]); but it does not follow that a party to such a contract can have no injunction to restrain its breach. It is now settled, I think, by the decided weight of authority, that in such cases, although the affirmative specific performance of the contract is beyond the power of the court, its performance will be negatively enforced by enjoining its breach.'

"A discussion of the principles applicable to specific performance is also found in the case of Great Northern Railway Company v. Manchester Ry. Co., 5 De G & S. 138, and in Woolhampton & Walsall Ry. Co. v. London & Northwestern Ry. Co., L.R. 16 Eq. 433.

"A number of cases have been cited by the defendants, which it is claimed hold contrary to these, but in all cases they were based on bills praying for specific performance, and not for an injunction against the breach of a contract.

"The Master, from a careful examination of all the Federal authorities, inclines to the belief that the position of the complainants is sustained by the weight of Federal authority.

"As above noted, it may be doubted whether the case of Ulrey v. Keith is in conflict with these decisions, inasmuch as the Master is of the belief that no question of specific performance can arise between the assignees of the lessees in this case, since no contractual relation exists between them."

Thus it appears that, if he adheres to the opinion which he then expressed, one of the present Justices of the Supreme Court of Illinois, at least, is of the opinion that the decisions relied upon are not in point for the reason that the action is in effect one between two lessees between whom no contractual relationship exists.

the agreement had been signed, accepted or bound himself to exercise the option."

The general rule is stated thus in 18 R. C.L. 1212: "Even in the absence of an express covenant, when a lessee undertakes to develop oil or gas land on a rental or a royalty basis, and the contract does not specify the number of wells to be drilled, there is an implied obligation that he will fully develop the land with reasonable diligence." Such an implied obligation is a valuable consideration.

I conclude that the lease in question was executed upon a sufficient consideration; that under the law of Illinois it granted a freehold; that plaintiff as assignee is entitled to enforce the same as alleged in the complaint; that the cases in Illinois in which surrender clauses have been held to bar equitable relief are not in point; that this is not a suit for specific performance, but one to quiet title, to remove clouds upon plaintiff's title, to prevent trespassing upon and irreparable injury to plaintiff's property, and seeks to protect plaintiff's interest by proper writ of injunction; that if it be said that the lease was optional in character, the recited consideration, in a binding obligation under seal, is sufficient; that the acceptance by performance by lessee within the time provided removed lack of mutuality, if any existed, and that the implied covenants of plaintiff are an additional sufficient consideration. The averments of the complaint are sufficient to constitute a good cause of action. The motions to dismiss are denied.