ALLEN CORTELYOU *et al.* Appellees, *vs.* T. N. BARNSDALL *et al.* Appellants.

*Opinion filed October 26, 1908.*

CONTRACTS—*while oil and gas lease is without mutuality it may be revoked.* A so-called oil and gas lease which does not expressly recite any consideration nor expressly fix a single obligation with which the lessee is bound to comply is without mutuality, and may be revoked by the lessor at any time before the lessee has, by some act done after signing the agreement, accepted, or bound himself to exercise, the option given by the instrument.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Crawford county; the Hon. E. E. NEWLIN, Judge, presiding.

The appellees, Allen Cortelyou and Ella A. Cortelyou, his wife, filed in the circuit court of Crawford county their bill in chancery for the cancellation of the following instrument, called in the bill an oil and gas lease:

"Agreement of lease, made this 8th day of July, A. D. 1905, between Allen Cortelyou and Ella A., his wife, of Robinson, Ill., lessor, and W. W. Seybert, of McKee's Rocks, Pa., lessee, witnesseth:

"That the lessor hereby grant unto lessee for the term of three (3) years, (and so long thereafter as oil or gas is produced from the land leased and royalty and rentals paid by lessee therefor,) the exclusive right to mine for and produce petroleum and natural gas from and the possession of so much of eighty (80) acres of land in Crawford county, State of Illinois, as may be necessary therefor, with the right to use water and gas (if found) for the necessary engines, and to remove all machinery, fixtures, etc., placed by lessee on the premises, said land bounded: E. ½ of N. W. ¼ Sec. 30, T. 7, N. R. 12 W.

"No well to be drilled within three hundred feet of the buildings without lessor's consent. The lessee to deliver to lessor, in pipe line, the one-eighth (⅛) of all petroleum produced from the premises and to pay one hundred ($100) dollars per annum for each gas well from which the gas is marketed, payable semi-annually, from the date and while the same is so utilized, and to pay all damages to growing crops. This lease is to be null and void and

no longer binding on either party if a well is not commenced on this block of 1000 acres within twelve months from this date, unless the lessee' shall thereafter pay annually to lessor twenty-five cents per acre per year for each year's delay in commencing said well.  Each payment to extend the time for completion for one year.  A deposit to the credit of lessor in Oblong Bank, Oblong, · Ill., to be a good payment of any money on this lease.  Party of the first part to have free gas for the dwelling thereon by laying their own line and making connections at well, provided there is a surplus gas, and at no time to use gas out of dwelling.  The lessee to have use of all casing-head gas for drilling and producing purposes, and to pipe the same to any well drilled by lessee on these premises.  Party of the second part to protect all lines.  All grants and covenants to extend to the heirs and assigns of the parties hereto.  Lessee to bury all pipe lines below plow depth when requested.

"Witness the hands and seals of the parties.

|  |  |
|---|---|
| ALLEN CORTELYOU, | (Seal) |
| ELLA A. CORTELYOU, | (Seal) |
| W. W. SEYBERT. | (Seal)" |

Witness: W. C. Cortelyou."

The bill alleged that Seybert, the lessee, paid no consideration for the contract; that the fee of the premises is in the complainant Allen Cortelyou, and that complainants were when the lease was executed, and have been ever since, residing upon the premises, which are their homestead; that Seybert is not bound by the lease to develop said premises for oil or to complete a well on the premises at any time or to pay complainants anything for his failure to do so, but that such action is optional with Seybert and his assigns, and that the lease is a dubious, speculative contract, liable to be defeated at any moment by Seybert or his assigns; that Seybert falsely and fraudulently represented to complainants that if they would execute the lease he would proceed at once to develop the premises for oil or gas; that complainants relied upon said statement and were induced by him to execute the same, but that said Seybert and his assigns have not developed said premises nor did he ever intend to do so but obtained said lease or option purely for speculative purposes; that Seybert falsely represented to complainants that the lease was the most liberal ever

offered to land owners and gave them a greater royalty than any lease that had ever been executed by any person engaged in the production of oil or gas, all of which was untrue and known so to be by Seybert at the time such representations were made; that complainants relied upon said statements and were induced thereby to execute said lease, to their great injury and damage; that said lease or option was unfair, inequitable and unjust to complainants, and attempts to bind them but said Seybert and assigns are not bound, and the lease is without any consideration to complainants of any kind, and is void, and subject to revocation at the will of said Seybert and assigns, and is also subject to revocation of complainants at will; that in accordance with their rights they did, in March, 1906, give notice in writing to said Seybert and his assigns that they elected to exercise their right to revoke, and did revoke, said lease, and notified said lessee and his assigns not to enter upon said premises for any purpose; that previous to the giving of said notice neither said Seybert nor his assigns had done anything toward developing the premises for oil and gas, and had not been to any expense, in any manner, on said premises. The bill further alleged assignments by Seybert of all his interest in portions of the said premises and of undivided interests in other portions thereof, in April, 1906, to various persons and corporations, who were all made defendants to the bill, which prayed that the lease and all of the said assignments might be declared null and void and clouds upon complainants' title and that they might be canceled and defendants enjoined from entering upon the premises or interfering with complainants' possession thereof. By an amendment to the bill it was alleged that the Minnetonka Oil Company, one of the assignees of Seybert, was a foreign corporation, and had not, at the time it received the assignment, complied with the requirements of the statute in regard to foreign corporations doing business in this State. Separate answers were filed by the vari-

ous defendants. A hearing was had, the evidence being taken in open court, and a decree rendered finding all the facts as averred in the bill, except the fraud alleged, enjoining the defendants from entering upon the premises and canceling the lease and the assignments thereof. The decree has been affirmed by the Appellate Court, and the defendants in the circuit court prosecute this appeal to reverse the judgment of the Appellate Court.

W. W. ARNOLD, and EUGENE MACKEY, (McCARTY & ARNOLD, and LEE & MACKEY, of counsel,) for appellants.

PARKER & NEWLIN, and CALLAHAN, JONES & LOWE, for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

After appellees notified Seybert that they had elected to revoke the option given by the lease, the appellants, as averred by their answers and shown by the proof, within twelve months from the date of the lease made tender of the twenty-five cents per acre therein specified, for extending the time for the completion of the contract. This was unavailing, if, as contended by appellees, the contract was without mutuality.

Of the questions which are open for our consideration the initial one is, was Seybert in fact bound to do anything whatever under the option agreement? If not, as he had not paid anything for the option, had not acted on the agreement, and had not, after it was signed, bound himself to accept the option, appellees were at liberty to avoid the undertaking.

It will be observed that the instrument does not expressly fix a single obligation with which Seybert was bound to comply and does not expressly recite any consideration upon which it was entered into. Appellants contend, however, that an implied covenant arises binding Seybert to

drill, develop and operate the premises demised. Whether such an implied covenant may be gleaned from an instrument in substance as that now before us is a question upon which the authorities in other jurisdictions are not uniform. We deem a discussion of those cases unnecessary, as the decisions of this court warrant the conclusion that this contract is without mutuality, and that the option could be withdrawn at any time before Seybert had, by some act done after the agreement had been signed, accepted or bound himself to exercise the option.

In *Bauer* v. *Lumaghi Coal Co.* 209 Ill. 316, a contract pertaining to the conveyance of a right of way for a railroad track to a proposed coal mine was involved. The agreement apparently required Bauer to convey the right of way for the sum of $300, if the same should be deemed necessary by Rupprecht, his heirs or assigns. The purpose of Rupprecht evidently was to place himself in a position where he could acquire the right of way in case the mine which he and others proposed to open should prove rich enough to warrant the construction of a coal road. We held, however, that Rupprecht was not bound by the contract to do anything unless he elected to take the initiative, and the agreement lacking mutuality could not be enforced. In *Bruner* v. *Hicks,* 230 Ill. 536, a contract similar to, and executed under like circumstances as, the one now before us was considered. We there expressed the view that the lease was obtained purely as a matter of speculation and not with a view to prospect the lands, as the lessors had been led by the lessee to believe would be done when the instrument was executed.

Appellees' revocation was merely the withdrawal of an offer which Seybert had not seen fit to accept or the retraction of an option which he (Seybert) had not elected to exercise. *McCauley* v. *Coe,* 150 Ill. 311.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*