THE ILLINOIS KAOLIN COMPANY, Appellee, *vs.* THOMAS B. GOODMAN *et al.* Appellants.

*Opinion filed December 21, 1911.*

1. APPEALS AND ERRORS—*when freehold is involved in proceeding to set aside lease as a cloud on title.*  A freehold is involved in a proceeding to set aside a lease as a cloud on title where the lease provides for a term which may last for an indefinite period, the term stated being for ten years, "and as much longer as said premises produce minerals of any kind in paying quantities."

2. LEASES—*when a lease is properly set aside as obtained by fraud.*  A lease giving the right to take minerals upon royalties is properly set aside as obtained by fraud where it is without mutuality, and the evidence shows that the lessees falsely represented themselves as trustees of persons having large capital, who would build a large plant on the land; that they were, in fact, trustees for no one and were without means, and that they never did anything under the lease, except to make a few tests, for some six years, when they assigned it for a nominal consideration.

APPEAL from the Circuit Court of Union county; the Hon. A. W. LEWIS, Judge, presiding.

D. W. KARRAKER, for appellants.

A. NEY SESSIONS, and JAMES LINGLE, for appellee.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

Appellee filed a bill in the circuit court of Union county to set aside and declare null and void a certain lease and assignment thereof as a cloud upon its title to certain real estate in that county.  Appellants filed an answer to the bill as amended, and after the pleadings were settled a hearing was had before the chancellor and decree entered finding, among other things, that said lease was procured by fraud and circumvention, that it had been abandoned and forfeited before its assignment to appellant Goodman, and decreeing that said lease and assignment be set aside and

declared null and void against appellee and its successors and assigns as a cloud upon its title. From that decree this appeal was perfected.

The lease in question was executed November 25, 1902, by Margaret A. Keltner, of the first part, and J. Odenbaugh and H. T. Lee, trustees, of the second part. It was drawn up on a long-form printed lease, such as is often used in leasing coal or oil rights. It gave the parties of the second part exclusive right to dig, bore and otherwise prospect and mine for any and all kinds of valuable mineral substances on a certain eighty-acre tract of land in said Union county owned by Mrs. Keltner, for ten years, "and as much longer as said premises produce minerals of any kind in paying quantities," and the right to search, dig, bore, mine and excavate for said substances in as many places as they may deem proper and extract and remove the same, and provided they were not to sink shafts or pits within one hundred yards of any dwelling house on the premises. The lease stated that one dollar consideration had been paid, and that the parties of the second part should "commence and make search for said substances in and upon said demised premises within six months from the date hereof, and to render unto the party of the first part, her legal representatives or assigns, for each and every valuable mineral mined or produced and shipped from the premises, * * * the following royalty, to be paid on the first day of each month, for all the minerals produced and shipped in the preceding period, to-wit: Mineral paint, ochre and oxides, per ton, fifty cents; clay, all kinds, per ton, fifty cents;" also a number of other minerals apparently printed in the form, the blanks for the amount of royalty not being filled out. There was a further provision that the parties of the second part could at any time remove any buildings, machinery or materials they had placed thereon, and could cancel the lease by giving written notice to the first party. The instrument was not under seal.

In 1902, and for many years prior thereto, Margaret A. Keltner, now deceased, owned in fee simple and occupied the premises here in controversy. The evidence tends to show that about five feet under the surface of all this land was a deposit of kaolin clay, running to a considerable depth. Her husband in his lifetime mined this clay, and after his death she continued to mine it in a rather primitive manner and market it. She had very little other property except this eighty acres, and no sources of income except from the sale of the clay and little assistance in getting a living except from her grandson, William R. Keltner, who after his marriage lived with his family on the premises close to her. But few of the eighty acres were cultivated, and all of the tract appears to have been rough and unprofitable for agricultural purposes. In November, 1902, Odenbaugh and Lee came from Ohio, claiming that they were trustees of persons having considerable capital who wanted to lease the land and put in a large manufacturing plant that would handle one hundred tons a day. The lease was prepared by Lee on a long printed form. Mrs. Keltner said she could not read the small type in which it was printed, and it was read over by Lee in her presence. One of the witnesses, Hawkins, testified he was present, and that Lee, while pretending to read the same, read as a part of it "that if they did not have machinery on the ground and be mining clay in paying quantities within six months that this lease is forfeited." Mrs. Keltner signed the lease and acknowledged it before a notary public who was brought there by Lee. Odenbaugh left Illinois immediately after the execution of the instrument, while Lee stayed something over a week and took seven or eight barrels of clay from the land. After digging this clay nothing further was heard from Lee and Odenbaugh until 1908 and their whereabouts appears to have been unknown to Mrs. Keltner. From the time the lease was executed she mined clay on the eighty acres with the assistance of her grand-

son, William R. Keltner, and October 2, 1907, she deeded the property to him. Previous to that she had made a lease to Mullin Bros. for twenty-five years, permitting them to dig clay and pay her royalties. Mrs. Keltner died January 9, 1908. William R. Keltner and wife, on February 4, 1908, gave an option to Mullins Bros. to purchase the land for $8000, and on April 13, 1908, conveyed the property for that consideration by warranty deed. On the same day the Mullins conveyed the property to A. A. Fasig and Mary A. Perrine for $15,000, and thereafter, August 12, 1908, the last named persons conveyed the land to appellee. The evidence shows that appellee has expended about $60,000 in buildings and machinery for the purpose of digging clay. The lease to Odenbaugh and Lee was assigned by them to appellant Goodman for a nominal consideration the last of February or the first of March, 1908. As the term provided for by the lease might last for an indefinite and undetermined period, a freehold was involved and the case was rightly brought directly to this court. *Bruner* v. *Hicks*, 230 Ill. 536.

If the construction of this contract contended for by the appellants is correct, it was, as alleged in the amended bill, lacking in mutuality. Lee and Odenbaugh, who testified on the trial, while contending that they had not abandoned the contract, admitted that they had not done anything to carry out its provisions except to make a few tests shortly after it was executed. It is evident from this record that the contract was purely speculative on their part, and that by its terms it bound them to do nothing except to make these tests. Under the holdings of this court in *Cortelyou* v. *Barnsdall*, 236 Ill. 138, and *Bruner* v. *Hicks, supra,* the lease must be held to be lacking in mutuality and not capable of being enforced. Furthermore, it was such a contract as Mrs. Keltner, situated as she was, if she had fully understood its terms and was possessed of her senses, would not have executed. She could not compel Lee and

Odenbaugh to do anything under it. All of the circumstances surrounding the transaction tend to support the testimony of the witness Hawkins that Lee, in reading the contract, stated that it provided that he and Odenbaugh should have their machinery on the ground and begin work a short time after the contract was executed.

It is argued that Lee and Odenbaugh have both testified that they did not misrepresent anything, and that therefore the weight of the testimony did not uphold the finding of the court that fraud had been perpetrated upon Mrs. Keltner in obtaining her signature. They were not trustees for anyone, did not represent any capital and were without means. In *Bryant* v. *Simoneau,* 51 Ill. 324, this court, in discussing the question of fraud, said (p. 327) : "It is urged that fraud must be proved and not inferred. This is true, but, like all other facts, it may be proved by circumstances. We should seldom, if ever, expect to prove fraud by the admissions of a party, nor should we expect to find direct and positive evidence of the fact. Whatever circumstances, when proven, convince the mind that the fraud charged has been perpetrated is all that is required." (*Schumacher* v. *Bell,* 164 Ill. 181; *Mortimer* v. *McMullen,* 202 id. 413; *Vollenweider* v. *Vollenweider,* 216 id. 197.) This lease is so unconscionable and so unreasonable, if construed as contended for by appellants, that the trial court was justified in holding that Mrs. Keltner was led to execute it through fraud.

Appellants Lee and Odenbaugh claim no interest in the contract. Appellant Thomas B. Goodman owns land near that here in question and has been engaged for years in mining the same kind of clay. When he found that appellee had made arrangements to purchase this property he hunted up Lee and Odenbaugh and obtained an assignment of their lease.

The decree of the circuit court will be affirmed.

*Decree affirmed.*