Leo Gans, Plaintiff-Appellee, v. Marlowe Pen Co., an Illinois Corporation, Swiss Harmony, Inc., an Illinois Corporation, Raymond-Richards Company, an Illinois Corporation, King-Richard Company, a/k/a Dudley Sales Corporation, an Illinois Corporation, Piedmont Products, Inc., an Illinois Corporation, Leo R. Slaton, Harriet Lilley, Adele E. Slaton, David Koolish, and Leo R. Slaton, d/b/a Dudley Sales Company, Defendants, Leo R. Slaton and King-Richard Company (Now Known as Swiss Harmony, Inc.), Appellants.

Leo Gans, Plaintiff-Appellee, v. Swiss Harmony, Inc., an Illinois Corporation, Marlowe Pen Co., an Illinois Corporation, Raymond-Richards Company, an Illinois Corporation, King-Richard Company, a/k/a Dudley Sales Corporation, an Illinois Corporation, Piedmont Products, Inc., an Illinois Corporation, Leo R. Slaton, Harriet Lilley, Adele E. Slaton, David Koolish, and Leo R. Slaton, d/b/a Dudley Sales Company, Defendants, Leo R. Slaton and King-Richard Company (Now Known as Swiss Harmony, Inc.), Appellants.

Gen. No. 52,479.

First District.

April 25, 1969.

Rehearing denied and supplemental opinion August 1, 1969.

Robert A. Sprecher, of Chicago, for appellants.

Sonnenschein, Levinson, Carlin, Nath & Rosenthal, of Chicago (Edwin A. Rothschild and Joel F. Henning, of counsel), for appellee.

GOLDENHERSH, P. J.

Defendants, Leo R. Slaton, hereafter called Slaton, and Swiss Harmony, Inc., formerly King-Richard Company, appeal, and plaintiff cross-appeals from the decree of the Circuit Court of Cook County entered in plaintiff's shareholder's derivative actions seeking an accounting of funds allegedly misappropriated, and other relief.

The defendants, Marlowe Pen Co., hereafter called Marlowe, and Swiss Harmony, Inc., hereafter called Swiss, are Illinois corporations of whose outstanding capital stock plaintiff owns respectively 16⅔% and 12½%. Slaton owns 50% of the outstanding shares of stock of Marlowe, and he and his wife own 50% of the outstanding stock of Swiss. The remaining shares of Marlowe are owned by David Koolish, and Ralph L. Stolkin, and the remaining shares of Swiss are owned by David Koolish, A. L. Koolish and Ralph L. Stolkin.

King-Richard Company, hereafter called King-Richard, is an Illinois corporation, all of whose outstanding shares

are owned by Slaton. Following the sale of certain of its assets, Swiss Harmony, Inc. changed its name to Swiss Liquidating Co. and King-Richard thereupon amended its articles of incorporation and changed its name to Swiss Harmony, Inc.

Plaintiff brought two actions alleging various acts of misappropriation and mismanagement. The complaints are lengthy and the specific allegations will be discussed only to the extent necessary to this opinion. The two cases were consolidated and referred to a Master-in-Chancery. The Master took testimony, and in a Final Report and Supplemental Report reported to the court his findings of fact and conclusions of law. The court considered and ruled upon exceptions to the Reports, and entered the decree from which the appeal and cross-appeal are taken.

The evidence shows that Marlowe was in the business of selling ball-point pens, and Swiss manufactured and sold various types of novelty merchandise. These corporations, King-Richard, and several other enterprises, were all operated out of the same office and warehouse facilities. The record contains much evidence of various transactions between these companies, and the same firm of certified public accountants prepared financial reports and tax returns for all of them.

In his complaint plaintiff alleges that the business and affairs of Swiss "have been wholly managed, dominated and controlled" by Slaton, and one of the principal charges of misconduct on the part of Slaton is that he wrongfully acquired the assets of Swiss at a price far below their value, and transferred them to King-Richard. The evidence with respect to this transaction shows that at a meeting of the shareholders of Swiss, over plaintiff's objection, a resolution was adopted that the corporation be liquidated and dissolved, and providing for the sale of its inventory, furniture, fixtures and goodwill at public auction. It further provided a method of adver-

55

tising the sale, and an upset price of 80% of the book value of the assets sold.

Plaintiff, in a letter dated a week before the date set for the auction, demanded the sale be postponed until certain steps were taken which he deemed necessary if the sale were to result in an adequate price for the property.

Slaton ran a small advertisement in the Tribune announcing the sale of inventory, fixtures, machinery and goodwill of Swiss, and a public preview for a period of four hours on the day preceding the sale. The auctioneer testified that he did not inventory, evaluate or examine the assets. No bidders appeared except Slaton, and he bid in the property for the sum of $145,000.

An auctioneer, called by plaintiff, testified as to the usual steps taken by an auctioneer in this type of sale, and testified that the auction was inadequate and improper under accepted practices in Chicago. He stated that if his firm were handling the sale the fee would be 5% of the total amount realized and he would have recommended that $3,500 to $5,000 be spent in advertising.

The evidence shows that on February 7, 1958, the date of the sale Slaton valued the assets of Swiss as follows:

| | Book Value | Sales Price |
|---|---|---|
| Inventory | $159,727.26 | $133,791.78 |
| Automobiles | 4,146.02 | 3,500.00 |
| Other Fixed Assets | 14,193.75 | 5,000.00 |
| Prepaid Insurance | 1,708.22 | 1,708.22 |
| Trademarks | . . . . . . . . . | 1,000.00 |
| Total | $179,775.25 | $145,000.00 |

Exhibits in evidence show that Swiss was on a December 1–November 30 fiscal year, and in financial statements prepared at the end of its fiscal years preceding the sale, the property in question was valued:

| Year | Inventory | Fixed Assets |
|------|-----------|--------------|
| 1957 | $146,693.86 | $19,488.79 |
| 1956 | 147,329.17 | 29,595.91 |
| 1955 | 57,620.99 | 31,024.98 |
| 1954 | 94,281.18 | 37,813.23 |

Paul Schneider, a certified public accountant, testified that in each year the inventories were valued at the lower of cost or market. He defined "market" as being the cost of replacing merchandise, assuming purchase from normal sources in normal quantities, but not in excess of what could be realized from its sale. The valuations were primarily determined by Mr. Slaton, but plaintiff, and David Koolish, frequently participated in the discussions.

Vincent G. Matranza, a bookkeeper employed by Slaton in various of his enterprises, testified that the inventories were prepared under his supervision, and although most valuations were made by Slaton, some were determined by him.

Fred F. Lang, a certified public accountant, testified that at plaintiff's request he made a comparison of certain inventory prices as shown on an inventory taken as of July 31, 1957, and one as of February 7, 1958. The comparison was limited to the items which appeared in both inventories, and was done by extending the quantities shown at February 7, 1958, at the unit prices shown on the inventory of July 31, 1957. An exhibit prepared by the witness shows the comparisons made, and plaintiff's exhibit 6 shows that the valuation in the later inventory is $42,073.76 lower than in the earlier. The witness, admittedly, had no knowledge of the depreciation and obsolescence factors pertinent to this type of inventory.

Norman Zuckerman, an associate of Mr. Lang's firm, testified that he had examined King-Richard's books, and in August 1959 King-Richard sold to Selcol-Limited at a price of $10,000 a set of tools, dies, fixtures and molds

for manufacture of Roundelays, one of the novelties formerly manufactured by Swiss. King-Richard's books showed that this item was treated as income, and there was no corresponding write-off or charge-off for the period between February 7, 1958 and the date of the sale. He could not state whether these items were owned by King-Richard prior to February 7, 1958, and could not say whether they were acquired from Swiss.

The testimony of George J. Collinet, a former employee of Swiss, employed by King-Richard as a designer, testified that much of what was sold to Selcol was formerly used by Swiss. He testified with respect to items which were formerly manufactured by Swiss, and which King-Richard continued to manufacture.

The plaintiff testified that he examined an inventory prepared as of December 31, 1957, and checked with Matranza in an effort to determine the replacement cost of the finished goods and other items. He found from an examination of cost records that Mr. Slaton's valuations were understated. Plaintiff's exhibit 20 is a comparison of inventory values, purporting to compare the inventories of November 30 and December 31, 1957. It shows the items, the number on hand, Slaton's valuation, and "Replacement Cost as Determined by Leo Gans." The valuation as determined by plaintiff was $227,281.76. Plaintiff testified he had never been engaged in the novelty business, and had no knowledge of that type of business.

Slaton testified that the merchandise assembled and sold by Swiss was of the "novelty" type, and some items were highly successful while others were failures. He stated that the major part of the business was done in the last few months of the year, and unsold merchandise was frequently worth less than its cost. He testified that King-Richard still had, unsold, many of the items acquired from Swiss. He pointed out a number of alleged errors in plaintiff's computations and cost figures.

The Master found:

"20. That the sale of Swiss Harmony, Inc., on February 7, 1958, was made in accordance with the Business Corporation Act of the State of Illinois and in accordance with the resolution of the corporation, and was a legal and proper sale."

The circuit court found the assets, on the date of the sale had the following values:

| | |
|---|---:|
| Inventory of goods | $232,562.89 |
| Tools, dies and molds | 10,000.00 |
| Automobile | 4,146.02 |
| Other fixed assets | 14,193.75 |
| Prepaid insurance | 1,708.22 |
| Goodwill, trademarks, etc. | 1,000.00 |
| Total | $263,610.88 |

and the decree provides:

"C. Slaton and New Swiss [1] shall jointly and severally account to Swiss, and Swiss shall have and recover from said defendants jointly and severally, for the fraudulent acquisition of Swiss assets described in paragraph 6 hereof, the sum of $118,610.88."

With respect to this portion of the decree Slaton and King-Richard contend (a) the sale was accomplished in accordance with section 72 of the Illinois Business Corporation Act; (b) the sale price was fair, reasonable and more than adequate; (c) laches applies with respect to the sale of the assets; (d) the Master's findings and conclusions are entitled to weight and the court erred in holding the sale of the Swiss assets was fraudulent.

Plaintiff contends that the evidence affirmatively supports the court's finding that the sale was fraudulent.

---

[1] "New Swiss" is Swiss Harmony, Inc., formerly King-Richard Company.

■ Citing Winger v. Chicago City Bank & Trust Co., 394 Ill 94, 67 NE2d 265 and Shlensky v. South Parkway Bldg. Corp., 19 Ill2d 268, 166 NE2d 793 plaintiff has correctly stated the rule that directors of a corporation have the burden of overcoming the presumption against the validity of a transaction in which they acquire corporate assets. He argues that it was not an arm's length transaction and Slaton was the controlling corporate officer of Swiss.

■ Where, as here, the trial court did not approve the findings of the Master-in-Chancery, the rule governing our review is stated in Uksas v. Zelensky, 21 Ill2d 303, 172 NE2d 359, wherein, at page 310, the Supreme Court said:

> "In determining the propriety of that decree we must consider the weight to be given the findings of the chancellor, and whether they were supported by the evidence. While it is generally agreed that where the chancellor has heard the evidence his findings will not be disturbed unless they are clearly and manifestly against the weight of the evidence (Larson v. Glos, 235 Ill 584, 588; Jones v. Koepke, 387 Ill 97, 107) where, however, as in the instant case, the master alone heard the evidence and the chancellor adjudicated the cause on the 'frozen record,' there is no such unanimity of expression in the case law. Under these circumstances, some decisions have applied the manifest weight rule if the chancellor approves the findings of the master (Schmalzer v. Jamnik, 407 Ill 236; Mruk v. Mruk, 379 Ill 394, 401; Klekamp v. Klekamp, 275 Ill 98, 102; McGlaughlin v. Pickerel, 381 Ill 574, 583; Pasedach v. Auw, 364 Ill 491, 496) ; while others insist that all the facts are open for consideration on review, particularly if the chancellor rejects the master's findings. (Stasch v. Stasch, 355 Ill 581, 583; Jones v. Koepke, 387 Ill 97, 107; Vesolowski v. Vesolowski, 403 Ill 284; Zil-

60

vitis v. Szczudlo, 409 Ill 252; Chechik v. Koletsky, 311 Ill 433; Kosakowski v. Bagdon, 369 Ill 252, 258; Kelly v. Fahrney, 242 Ill 240; Fairbury Union Agricultural Bd. v. Holly, 169 Ill 9; Thatcher v. Kramer, 347 Ill 601.) These decisions reiterate the rule that the master's report, while prima facie correct, is of an advisory nature, and that all the facts in a chancery case are open for consideration in the first instance by the trial court, and, in case of an appeal, by the reviewing court, where the ultimate question is, 'Was the decree rendered by the court a proper one under the law and the evidence?'

"Inasmuch as the chancellor herein did not hear the evidence and rejected the master's findings, we find apposite the comment of the court in the Kosakowski case at p 285: 'The master, who saw and heard the witnesses testify, found for appellant. The chancellor, without hearing any evidence, sustained exceptions to the master's findings of facts and entered a decree for appellee, Bagdon. While the rule is that the master's findings on controverted facts do not carry the weight of a jury verdict in a suit where trial by jury is a matter of right, yet such findings are advisory (citation), and thus are entitled to much consideration. The chancellor, in this case, had no better opportunity to judge the credibility of witnesses than has this court on appeal, and all the facts are open for our consideration. (Citations.)'

"In the light of this prevailing rule, it is our duty to make our own independent determination of the facts, giving due consideration to the findings of the master, who heard and saw the witnesses, since the factual conclusions here depend upon an appraisal of the credibility of conflicting testimony."

There is no question that Slaton was the active operating head of Swiss, and he and his wife owned 50% of its

stock, but under the provisions of section 72 of the Business Corporation Act the sale of its corporate assets required approval of the holders of 66⅔% of its outstanding shares. There is no evidence that the shareholders who voted with Slaton in favor of the resolution were in any manner coerced by him, nor is there any evidence of wrongdoing on their part. The evidence adduced by defendants shows, prima facie, that the sale was authorized in accordance with the provisions of section 72 of the Business Corporations Act, and conducted in compliance with the resolution of the shareholders. The valuations placed on the inventory and fixed assets are consistent with those in the year end financial statements as of November 30, 1957.

The only testimony of value adduced by plaintiff is that of Lang and himself. Lang's testimony is entirely consistent with Slaton's explanation of the decline in value of the merchandise at the end of the season as compared to July 31, 1957. Plaintiff's testimony is not supported by any records, and does not even attempt to establish the market value of the inventory at the time of sale.

There is no evidence as to the value assigned to the tools, molds and dies in determining the "fixed assets" in the various statements, and no evidentiary basis for treating them as a separate item, as was done by the trial court.

We hold, therefore, that the evidence does not sustain the findings of the circuit court with respect to the valuations and this portion of the decree (Paragraph C) is reversed.

Because of the conclusion reached, we do not consider the other contentions of the parties with respect to this portion of the decree.

The decree provides inter alia:

"B. Slaton shall account to Marlowe, and Marlowe shall recover from Slaton, for misappropriation of

Marlowe assets described in paragraph 5 hereof, the sum of $43,559.44."

This figure is comprised of five items (Court's Findings Paragraph 5(a) through 5(e)), the largest being the sum of $33,750 (Court's Findings Paragraph 5(c)) paid in salary to a Dr. Joseph Stolkin over a four-year period. It is plaintiff's theory that Dr. Stolkin performed no services for Marlowe, Slaton wrongfully caused the salary to be paid, and should be held accountable therefor. The record reflects that Dr. Stolkin died prior to the commencement of the hearings before the Master.

The Master found that the salary paid to Dr. Stolkin was paid with the full knowledge and consent of all of the shareholders. The decree finds that the Master erred in failing to surcharge Slaton therefor.

The testimony shows that Dr. Stolkin was a physician, father of Ralph Stolkin, and father-in-law of Joseph Koolish.

Paul Schneider, the certified public accountant, testified that his firm had been the accountants for the "Koolish group" which consisted of plaintiff, David Koolish, A. L. Koolish and Ralph Stolkin. When this group agreed with Slaton to organize Marlowe and Swiss, the Koolish group was to take 50% of the stock, and Slaton 50%; Schneider and his partners were retained as the certified public accountants for these companies, and were to be "the watch dogs" for the Koolish group; they prepared financial statements for the various companies at least three times a year and plaintiff received copies of each statement. During that period Mr. Schneider also prepared the audits for the Lemarge Company of which plaintiff was president and saw plaintiff frequently. Mr. Schneider testified further that frequently, shortly after statements were mailed out, plaintiff would ask him questions about various entries, and had asked specifically about Dr. Joseph Stolkin's salary.

63

■ From our review of the evidence, we hold that the Master's finding is sustained by the evidence, and this portion of the decree (Paragraph 5(c)) is reversed.

The trial court found that the Master erred in failing to surcharge Slaton for misappropriation of $6,131.24 (Paragraph 2(e)) for "Bribes wrongfully paid out of Swiss funds" and $3,330.98 (Paragraph 5(b)) which the court found was "Cost, less depreciation, of Marlowe automobile wrongfully given as a bribe."

The testimony shows that Swiss had been attempting to sell a novelty type of decanter to Jim Beam Distillery. Slaton was in contact with two employees of Beam, one of whom left Beam and became an official of another distillery. Through this individual, his employer bought decanters totalling approximately $1,250,000. The Marlowe automobile referred to was a Cadillac which was given this man. He was also paid $5,000 in cash, and given a ring and another gift, worth in the aggregate, $131.24. Another former Beam employee was paid $1,000 as the result of the transaction.

The greater part of the argument of both parties on these items is based on whether the so-called "bribes" were properly deductible business expenses. Slaton argues that although both Swiss and Marlowe were the subjects of detailed Internal Revenue Service audits the expenditures were not challenged, and plaintiff has cited cases where such claimed deductions were disallowed.

■ The only testimony with respect to the transactions is that of Slaton, and plaintiff has adduced no evidence that the payments and gifts were bribes, rather than the expense of promoting a sizeable sale of Swiss' merchandise. The sales were made in 1955 and 1956 and the record shows that plaintiff was a director of Swiss until April 1, 1957. The cash payment was made in November 1956, while plaintiff was a director. It cannot be determined from the evidence when the gifts of the Cadillac and the ring were made, or whether the respective equities of Swiss and Marlowe were adjusted in one

of the many settlements of intercorporate accounts shown in the record. Slaton did not, without the support of someone in the Koolish group control either company. The evidence shows affirmatively that plaintiff is not an innocent lamb shorn of his fleece by the shears of corporate intricacies, but an experienced sophisticated businessman who, in addition to operating a company of his own, had participated with the other parties in a number of transactions. It would require a greater degree of naivete than this court will confess to reach any conclusion other than plaintiff and the other shareholders knew and approved of the payments and gifts made, and the quid pro quo received therefor.

The surcharges based upon Paragraphs 2(e) and 5(b) of the decree are, therefore, reversed.

■■■ The court found that the Master erred in failing to surcharge Slaton for misappropriation of corporate funds of Marlowe with respect to the following:

> "5(a) Depreciation, operating expense and loss on sales of Marlowe automobiles, representing Slaton's personal use thereof, wrongfully charged to Marlowe . . . $5,920.97."

In the Thirty-Fifth finding of his Final Report, the Master found that Marlowe had purchased successively three Cadillac automobiles, which were used for the combined business of Swiss, Marlowe and Dudley Sales Corporation, the third one having been given away in connection with the decanter sales above discussed; that Slaton used the automobiles for calling on customers, and the expenses of purchase and operation were proper business expenditures except for $4,001.98, being the amount disallowed by Internal Revenue Service, and charged to Slaton.

The trial court did not state the reasons for its decision to overrule the Master's finding, but plaintiff argues that "it is apparent that Marlowe, which simply sold ballpoint pens, had no need of a Cadillac and that the automobile

charged to it was actually for the use of other companies, such as Swiss and Dudley."

Slaton testified that during the period involved he owned and maintained an automobile for his personal use, and the company-owned automobiles were used in connection with the performance of his duties for the various corporations and Dudley Sales Company.

A stipulation filed by the parties reflects many intercorporate transactions, some of which Schneider testified were adjustments of overhead and expenses. From our examination of the evidence we are of the opinion that the evidence supports the Master's finding and there is no evidentiary basis for the surcharge, and the surcharge based upon Paragraph 5(a) of the decree is, therefore, reversed.

With respect to the surcharge shown in Paragraph 5 (e) of the decree, the evidence supports the Master's findings in Paragraph 17 of the Conclusions in the Final Report, and the court erred in ordering the surcharge.

The surcharge ordered in Paragraph B of the decree, based on Paragraphs 5(a) through (e) of the court's findings, is therefore affirmed in the amount of $154.00, and as to the remainder thereof, is reversed.

We have examined the evidence with respect to the items surcharged in Paragraphs 2(a), (b), (c), (d) and (f) and conclude that there is an evidentiary basis for the findings and conclusions of the Master. There is no evidence which refutes Slaton's explanation that items (b), (c) and (f) were expenses properly incurred in connection with corporate business, and no evidence that the corporation was not reimbursed for item (d), a portion of which was an expenditure for Koolish and Stolkin.

With respect to item 2(a) plaintiff argues that Swiss made loans on which it was not paid interest and it should, therefore, not have paid interest to Dudley Sales Company, Slaton's individually owned company. There were no loans shown to have been made by Swiss to Slaton or any of his enterprises, and the fact that Swiss, for

business reasons, made some interest free loans, does not support the contention that Slaton was required to lend money to Swiss without interest. The evidence shows clearly that the shareholders of Swiss and Marlowe, including plaintiff, were paid interest for loans made to the corporations, and there is no evidentiary basis for the surcharge.

We have reviewed the record with respect to the findings of the Master which were approved by the circuit court (Court's Findings Paragraph 1(a) through 1(h)), several of which are the subject of Slaton's appeal and plaintiff's cross-appeal. Discussion of them is of no precedential value, and it suffices to say that the findings are supported by the evidence and will not be disturbed.

The surcharge ordered in Paragraph A of the decree, based on Paragraphs 1 and 2 of the court's findings, is therefore affirmed in the amount of $5,284.12, and as to the remainder thereof, is reversed.

For the reasons herein set forth the decree of the Circuit Court of Cook County is affirmed in part and reversed in part and the cause is remanded to the Circuit Court of Cook County with directions to enter a decree, and for such other proceedings as are consistent with this opinion.

Decree affirmed in part, reversed in part and remanded with directions.

MORAN and EBERSPACHER, JJ., concur.

### SUPPLEMENT TO OPINION UPON DENIAL OF PETITION FOR REHEARING

█ In his petition for rehearing plaintiff, correctly points out that mere compliance with formal statutory requirements do not shield a wrongdoer from liability for fraud. In the discussion in the first full paragraph on page 9 of the opinion the court, inadvertently, failed to

state that the evidence, prima facie, also met the requirement that defendant prove the sale price to have been fair, reasonable and adequate.

Despite the contention made in the petition, this court did not reach or decide the question of whether the $5,000 payment to Brown was a gift or a bribe, or as the petition terms it, "legitimate promotion expenses." A determination of this issue was not necessary to the decision of the case and any further discussion of the nature of the transaction would be dictum.

The court is not aware of any innuendoes with respect to the plaintiff, and the statement of which plaintiff complains is fully supported by the record.

The petition for rehearing is denied.