Stanley Turzynski, Plaintiff-Appellant, v. Samuel A. Libert, Defendant-Appellee.

Gen. No. 52,523.

First District, Fourth Division.
January 21, 1970.
Rehearing denied May 8, 1970.

D. Adolphus Rivers, of Chicago, and Stanley Turzyn-ski, pro se, of Chicago, appellant.

Kachigian & Buonafede and Michael Levin, of Chicago (Michael Levin, of counsel), for appellee.

MR. PRESIDING JUSTICE STAMOS delivered the opinion of the court.

Plaintiff, Dr. Stanley Turzynski, brought suit to enjoin and restrain defendant, Dr. Samuel A. Libert, from resuming the practice of medicine in violation of a restrictive covenant. Plaintiff appeals from the judgment of the Circuit Court of Cook County which dismissed plaintiff's complaint for want of equity and taxed costs including Master's fees against plaintiff.

On May 4, 1961, the parties entered into a written agreement whereby defendant agreed to sell to plaintiff certain real estate, personal property and medical equip-

ment, accounts receivable and defendant's medical practice, located at 6165 Archer Avenue, Chicago, Illinois, and known as the Garfield Medical Center, for the sum of $185,000.

The agreement contained a provision, identified as "par 6," that defendant would not practice his profession as a general practitioner or open a new office for the general practice of medicine directly or indirectly after the closing date of the transaction within a radius of 15 miles from 6165 Archer Avenue, Chicago, excepting therefrom the downtown area of the City of Chicago, River Forest and Oak Park, Illinois.

The sale was consummated on August 19, 1961, and plaintiff entered upon the operation of the medical center. Pursuant to another provision of the agreement defendant was to be retained as an employee of plaintiff until December 1, 1961 for the purpose of effecting a "smooth transfer" of the medical practice.

Approximately two years after the consummation of the foregoing sale, plaintiff was advised that defendant was preparing to open an office and engage in the general practice of his profession next door to the premises of plaintiff, at 6167 Archer Avenue, Chicago, Illinois. Plaintiff thereupon initiated the instant litigation predicated upon the restrictive covenant.

Defendant filed as part of his affirmative defense to plaintiff's complaint for an injunction, a certain document, Exhibit No. 3, dated December 1, 1961, and allegedly executed by the parties. The document commenced with the caption, "Amendment to the Memorandum of Agreement of May 4, 1961 between Dr. Samuel A. Libert and Dr. Stanley Turzynski," and recited the following:

"(1) Whereas paragraph numbered 6 on page three (3) is ambiguous and its validity questioned

354

because line five states a prohibitive 15 mile radius but does not give a time limitation and

"(2) Whereas Dr. Turzynski desires to capitalize financially on the good name and offices of Dr. S. A. Libert

"Dr. S. Turzynski and Dr. S. A. Libert do mutually agree to cancel and set aside the conditions of section 6 of said agreement provided Dr. S. A. Libert agrees to remain employed by Dr. S. Turzynski for an additional three (3) months beyond December 1, 1961 as per paragraph or sction (sic) numbered 5.

"Dated and signed Dec. 1, 1961.

 (S) Samuel A. Libert, M.D.
 (T) Samuel A. Libert, M.D.

 (S) Stanley Turzynski,
 (T) Stanley Turzynski, M.D."

Plaintiff's amended reply alleged that on or about December 1, 1961, at the Medical Center, the parties did execute a supplemental agreement, but that it was Exhibit No. 2. It provided that plaintiff was to make all subsequent installment payments to a named depository to the credit of defendant who was not to make any withdrawals therefrom until January 2, 1963.

Plaintiff also alleged in his reply that if his signature appeared on Exhibit No. 3, it was obtained thereon by fraud or misrepresentation by defendant; that plaintiff executed Exhibit No. 2 at defendant's request and that contemporaneously, by reason of defendant's fraud and misrepresentations, plaintiff unknowingly executed Exhibit No. 3 in the belief that it was a copy of Exhibit No. 2.

In this court plaintiff, pro se, filed a reply brief and presented his oral argument. Plaintiff's briefs raise the following contentions:

(1) There was never an agreement to enter into an amendment to cancel the restrictive covenant.

 (a) There can be no agreement without a meeting of the minds of the parties to the contract.

 (b) There must be an offer and an acceptance before a contract can come into being.

(2) The reviewing court has the duty to make its own independent investigation of the facts giving due consideration to the findings of the Master to determine whether the decree rendered by the Chancellor was supported by the evidence and in accordance with the law.

(3) The party who asserts the affirmative defense has the burden of proving its existence by a preponderance of the evidence.

(4) Where this is a lack of or gross inadequacy of consideration relief is afforded in equity to set aside such contract.

Plaintiff testified as follows:

He had a conversation with defendant about changing the payment provisions of the agreement and this occurred sometime in December, 1961. This conversation took place at the medical center and defendant advised plaintiff that this modification would allow defendant certain income tax advantages and handed plaintiff two documents to execute: Plaintiff read the top document and its copy and observed that it pertained to what he and defendant had just discussed. He retained both documents and laid them on a desk in the office without signing them and returned to his patients. (He also testified, however, that after he read the documents, de-

356

fendant took them back.) Plaintiff did not see them again until three hours later when defendant inquired of plaintiff if he had signed and when plaintiff replied in the negative, defendant urged him to do so. Plaintiff then alone entered the office, closed the door, saw the documents on the table, one directly over the other, and he proceeded to sign them. He did not look at the bottom document before he signed it. Plaintiff testified that when he affixed his signature to the first or the top document, he also wrote in the word "Chicago" above his signature. (This entry appears on Exhibit No. 2.) He did not make this entry on the bottom or second document when he signed it. After making the entry of the word "Chicago" on the first or top document and signing each document, he left them on the table and departed from the office.

Defendant testified that he recalled the day Exhibit No. 3 was executed because it was December 1, 1961, and was the termination date of his employment with plaintiff and unless the parties entered into this particular agreement, defendant's obligations in this regard pursuant to the original agreement were fulfilled. Plaintiff wanted defendant to remain for an additional three months; this had been discussed in the previous months as well as the release of defendant from the restrictive covenant.

Defendant related that Exhibit No. 2 was executed four to five days or a week before Exhibit No. 3 and both were executed at the medical center. (Only one copy of Exhibit No. 2 and Exhibit No. 3 were executed by the parties. A copy of Exhibit No. 3 was handed to plaintiff's receptionist-clerk, who then filed it.)

Plaintiff's former receptionist-clerk was called as a witness on behalf of defendant and she related that she was present at the medical center office on December 1, 1961. She had seen Exhibit No. 3 at that time and remembered defendant asked plaintiff to sign and plain-

357

tiff responded he would if defendant remained working for plaintiff. She recalls that plaintiff signed Exhibit No. 3 in her presence and there was a yellow copy. Defendant handed this yellow copy to her and told her it was a very important document and she should file it. This was all in the presence of plaintiff. She had no recollection of ever having seen Exhibit No. 2 on December 1, 1961.

The Master found that defendant remained employed by plaintiff for an additional three months beyond December 1, 1961, and that Exhibit No. 3 was not procured as the result of any trick or fraud on the part of defendant nor was the consideration grossly inadequate and recommended that the complaint be dismissed for want of equity. The trial judge confirmed and approved the Master's Report and dismissed the suit.

OPINION

Plaintiff initially contends that his signature on Exhibit No. 3 was secured by fraud and deceit perpetrated by defendant and thus was of no legal effect because it lacked the essential legal requisites of an agreement.

In his brief plaintiff argues, "During the three hour interval between the reading and signing of said two instruments, the defendant substituted the copy of the addendum (Exhibit No. 2) with a copy of the fictitious amendment (Exhibit No. 3), having the instruments so arranged, that the substituted copy was covered entirely with the original of the addendum (Exhibit No. 2), except for a space to sign, to pose as the copy of the addendum (Exhibit No. 2)."

In Papke v. The G. H. Hammond Co., 192 Ill 631, 61 NE 910 (1901), the court at page 635 said:

"Fraud in the execution of the instrument is practiced, where the instrument is misread to the party signing it, *or where there is a surreptitious substitu-*

■■■■■■■■

*tion of one paper for another,* or where, by some other trick or device, a party is made to sign an instrument which he did not intend to execute." (Emphasis supplied.)

■■ In Bundensen v. Lewis, 368 Ill 623, 15 NE2d 520 (1938), the court stated at page 632:

"Rules governing transactions of this character have frequently been announced by this court. In Weininger v. Metropolitan Fire Ins. Co., 359 Ill 584, it was said: 'The presumption very properly is that all men are honest. Where fraud is charged it must affirmatively be proved by clear and convincing testimony. It cannot be established upon mere suspicion.' The burden is upon the one alleging fraud to prove it by 'such clear and convincing evidence that the mind is well satisfied that the charge is true.' This is the rule announced in Jaworski v. Sujewicz, 334 Ill 19; also Schiavone v. Ashton, 332 id. 484; Mosbarger v. Brown, 313 id. 238; Carter v. Carter, 283 id. 324."

In the instant matter a cursory or superficial examination of Exhibits Nos. 2 and 3 would reveal they are not an original and copy. Plaintiff wrote in the word "Chicago" above his name on the first or top document, which he testified was Exhibit No. 2 but he did not make this entry upon the document he testified he assumed was a copy of Exhibit No. 2. It is singularly significant that although both Exhibits Nos. 2 and 3 were typewritten, Exhibit No. 2 was on plain paper, whereas Exhibit No. 3 was on the letterhead of an "S. Lee, General Agent." Exhibit No. 3 had two typewritten lines for signatures with the parties' names typewritten under the lines. Exhibit No. 2, however, did not have any lines for signatures nor any typewritten names.

Plaintiff's theory suggests that defendant would anticipate that plaintiff would not immediately execute the documents, but that there would be another fortuitous circumstance of a three-hour passage of time in which defendant would have ample opportunity to substitute a copy of Exhibit No. 2 for Exhibit No. 3 and further anticipate that plaintiff alone in a room would not glance at the substituted document and discover defendant's alleged fraudulent scheme. We cannot find that there was a "surreptitious substitution" or that there was a "trick or device" by which plaintiff was "made to sign an instrument which he did not intend to execute." Papke, supra.

Plaintiff also contends that there was such a gross inadequacy or lack of consideration that Exhibit No. 3 should be set aside. Plaintiff relies upon the following authorities in support of this contention. Burroughs v. Mefford, 387 Ill 461, 56 NE2d 845 (1944); Logue v. Von Almen, 379 Ill 208, 40 NE2d 73 (1941); Page v. Keeves, 362 Ill 64, 199 NE 131 (1935); Spencer v. Wilsey, 330 Ill App 439, 71 NE2d 804 (1947) and Illinois Kaolin Co. v. Goodman, 252 Ill 99, 96 NE 867 (1911).

In Burroughs, supra, the aggrieved party received no consideration for the execution of a deed procured by the fraud of her guardians on the day she attained her majority. In Logue, supra, there was ample evidence that aggrieved parties were ignorant of the effect of executing a mineral deed and lacked knowledge of its contents and were illiterate and were dealing with a person who was a director in a bank having vast real estate holdings and possessing extensive business experience. The court in Logue commented that the transaction lacked fair and open dealing which equity demands where the parties do not stand upon an equal basis. In Page, supra, an eighty-one-year old, sick and infirm woman with mental illness was induced to trade her residence property for business property whose existing mortgage

exceeded the sales price. The court commented that the consideration received was pitifully inadequate, in fact, it had no value. In Spencer, supra, the parties were joint venturers and the evidence disclosed a breach of a fiduciary relationship and clearly revealed that aggrieved party was induced by fraud and misrepresentation to transfer his interest in an invention. In Kaolin, supra, the evidence clearly revealed that aggrieved party was induced to execute leases by fraud and misrepresentation. That previous to signing, the aggrieved party could not read the small type, so when it was read to her, certain material interpolations were falsely read to her. The court further found that the lease lacked mutuality.

■ Plaintiff's authorities correctly recite abstract propositions of law, see Burroughs, supra, page 467:

> "Where the inadequacy of consideration is so great as to shock the conscience of a court of equity, and stamp the entire transaction with fraud from its inception, relief will be afforded in equity. (Fecht v. Freeman, 251 Ill 84; Schwarz v. Reznick, 257 Ill 479; Witherwax v. Riddle, 121 Ill 140.)"

In Fecht, supra, the aggrieved party, an insane person, exchanged a farm worth $12,500 for $1,250 cash, worthless mining shares and real estate mortgaged in excess of its value. In Schwarz, supra, the court found conclusive evidence of fraud. The evidence revealed that the aggrieved party was fraudulently induced to purchase by trade a $450 piece of real estate for a farm he had previously purchased for $4,500. In Witherwax, supra, the aggrieved party alleged and proved conclusively that he was fraudulently induced to pay the sum of $3,000 for alleged farm property that was worthless. It was proved that the seller fraudulently presented two persons to the aggrieved party who misrepresented that they were knowledgeable regarding the characteristics and value of the farm.

361

■ As we have pointed out, the foregoing cited authorities are readily distinguishable from the case at bar. Paragraph 5 of the original agreement referred to in Exhibit No. 3, provided that defendant was to effect a "smooth transfer" of the medical practice to plaintiff and also that defendant was not to publicize the sale but would remain at a salary of $300 a week for the purpose of effecting the transfer and to render medical services and perform administrative functions he ordinarily rendered while he was owner. We cannot say that the consideration in the case before us was grossly inadequate as to shock the conscience and require equity to intervene. The finding that the consideration for Exhibit No. 3 was not grossly inadequate is supported by the evidence. Defendant agreed to remain with plaintiff for an additional 3 months in consideration of the cancellation of the restrictive covenant. This arrangement was of mutual benefit.

We find that defendant established his affirmative defense by a preponderance of the evidence and further find that plaintiff failed to establish fraud "by such clear and convincing evidence that the mind is well satisfied that the charge is true." Bundensen, supra.

We hold that the decree rendered by the court was a proper one under the law and the evidence and affirm the judgment. Gans v. Marlowe Pen Co., 112 Ill App2d 52, 250 NE2d 811 (1969).

Judgment affirmed.

DRUCKER and LEIGHTON, JJ., concur.